1997-NMCA-072

943 P.2d 1058

**Larry M.P. ESPINOSA,
Worker–Appellant,**

v̇.

**ALBUQUERQUE PUBLISHING COMPANY, and Mountain States Mutual Casualty Company, Employer/Insurer–Appellees.**

**Larry M.P. ESPINOSA, Plaintiff–
Appellant,**

v.

**ALBUQUERQUE PUBLISHING COMPANY, a partnership owned and operated by the Journal Publishing Company, and Glen Forbus, as agent for Albuquerque Publishing Company and as an individual, Defendants–Appellees.**

**Nos. 16701, 16929.**

Court of Appeals of New Mexico.

June 20, 1997.

Certiorari Granted Aug. 6, 1997.

Elizabeth Gabriel, Albuquerque, for Appellant.

Mark J. Riley, Deborah S. Dungan, Padilla, Riley & Shane, P.A., Albuquerque, for Appellees.

## OPINION

ARMIJO, Judge.

1. On October 22, 1991, Larry Espinosa was struck by a vehicle as he walked across an Albuquerque, New Mexico, street while in a designated crosswalk. The vehicle that struck Espinosa was owned by Albuquerque Publishing Company (the Company), and its driver was returning to his place of work after a "mail run." It is undisputed that the accident was caused solely by the negligence of the driver. The accident occurred some two miles from the Albuquerque Publishing Company offices. When the accident occurred, Espinosa was walking to work; his shift was to begin some thirty minutes later. He, too, worked for the Company.

2. These consolidated appeals involve a question of statutory interpretation. We are asked to construe the exclusivity provisions in the Workers' Compensation Act (WCA), and the statutory definition of the course of employment, to determine whether the WCA provides the exclusive remedy for a worker who is injured on his way to work, in a traffic accident that occurred approximately half an hour before his shift began, approximately two miles away from his employer's premises, and as a direct result of an on-duty co-worker's negligent driving of a vehicle owned by the common employer.

3. We affirm the rulings of the district court and the workers' compensation judge (WCJ) and hold that Espinosa may not pursue a tort claim in district court to recover damages for the injuries he sustained in this accident because the WCA provides the exclusive remedy for Espinosa's injuries in this accident.

## I. PROCEDURAL BACKGROUND

4. In October of 1992, Espinosa filed a claim with the Workers' Compensation Administration to determine whether the injuries he sustained in this accident made him eligible for benefits under the WCA. NMSA 1978, §§ 52–1–1 to –70 (Repl.Pamp.1991 & Cum.Supp.1996). Espinosa filed a motion for summary judgment seeking a declaration that his accident was not covered by the WCA. The WCJ held a formal hearing on the matter and subsequently entered a summary judgment denying Espinosa's motion and holding instead that Espinosa was bound by the exclusive remedies of the WCA. We initially dismissed Espinosa's appeal from the WCJ's summary judgment order because this order was not final. Espinosa subsequently appealed from the WCJ's entry of a compensation order disposing of all issues in the workers' compensation proceeding.

5. Espinosa filed a tort claim against the Company in district court in October of 1994. The Company filed a motion for summary judgment in which it claimed that Espinosa's tort claim was barred by the exclusivity provisions in Section 52–1–9 of the WCA. The district court agreed and entered summary judgment in the Company's favor, finding that the exclusivity provisions in Section 52–1–9 apply to Espinosa because "he was on his way to work and is subject to the [going-and-coming] rule because of the employers [sic] negligence." Espinosa appealed from the district court's order granting summary judgment. This Court granted Espinosa's motion to consolidate the appeals from the district court's entry of summary judgment and the WCJ's compensation order. Both appeals have been consolidated for purposes of our review.

## II. DISCUSSION

6. Espinosa wishes to pursue a tort claim in district court against the Company to recover damages for the injuries he sustained in the accident, while the Company maintains that Espinosa is limited to the relief afforded him under the WCA. Resolving this dispute turns on the purpose and effect of the exclusivity provisions contained in Section 52–1–9 of the WCA and the definition of "injury by accident arising out of and in the course of employment" in Section 52–1–19 of the WCA. The issue was preserved below.

### A. Standard of Review

7. The interpretation of Sections 52–1–9 and –19 of the WCA is a question of law that does not require us to defer to the statutory interpretation of the district court or the WCJ. See Cox v. Municipal Boundary Comm'n, 120 N.M. 703, 705, 905 P.2d 741, 743 (Ct.App.), cert. denied, 120 N.M. 636, 904 P.2d 1061 (1995). Generally, this Court interprets statutory provisions with the primary goal of determining and giving effect to the intent of the legislature. See Junge v. John D. Morgan Constr. Co., 118 N.M. 457, 463, 882 P.2d 48, 54 (Ct.App.1994). While we do not believe that the legislature intended the result achieved in the circumstances of this case, we conclude that we must follow our Supreme Court's prior interpretations of the WCA even though the result may be inequitable and contrary to the intent of the WCA's drafters. See State v. Wilson, 116 N.M. 793, 795–96, 867 P.2d 1175, 1177–78 (1994) (Court of Appeals is bound to follow recent precedent of Supreme Court but is encouraged to express its rationale for any reservations about doing so); cf. In re Eastburn, 121 N.M. 531, 538, 914 P.2d 1028, 1035 (1996) (noting that judges who "set themselves above the law, to promote a personal belief about what the law should be, do a disservice to justice"). The applicable precedents of our Supreme Court compel us to affirm the rulings of the district court and the WCJ in this case.

### B. The Going–and–Coming Rule

(8) Section 52–1–9 of the WCA states:

The right to the compensation provided for in this act ... in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;

B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and

C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

Section 52-1-19 defines the phrase "injury by accident arising out of and in the course of employment" as used in the WCA as follows:

unless the context otherwise requires, "injury by accident arising out of and in the course of employment" shall include accidental injuries to workers and death resulting from accidental injury as a result of their employment and while at work in any place where their employer's business requires their presence but shall not include injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which is not the employer's negligence.

In this case, the question is whether the injuries resulting from Espinosa's accident fall under the WCA's definition of "injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which is not the employer's negligence." Section 52-1-19.

8. Our Supreme Court has construed Section 52-1-19 as incorporating a general principle of workers' compensation law known as "the going-and-coming rule." See Dupper v. Liberty Mut. Ins. Co., 105 N.M. 503, 506, 734 P.2d 743, 746 (1987). This rule arises from the recognition that, "while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey." 1 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 15.11 (1996). Professor Larson describes the going-and-coming rule as a "compromise [that] has been arrived at, largely by case law, with a surprising degree of unanimity: for an employee having fixed hours and place of work, going to and from work is

covered on the employer's premises." Id. (footnotes omitted). Off-premises injuries sustained while going to or from work are not covered under the WCA unless they fit within one of several specific exceptions to the going-and-coming rule. See generally 1 Larson, supra § 15 (discussing these exceptions).

9. As the district court acknowledged, New Mexico has a "peculiar" statutory version of the going-and-coming rule that appears to base its coverage for injuries sustained while going to and from work on the employer's negligence rather than the fact that the injury occurred on the employer's premises. See § 52-1-19. While recognizing the "peculiarity" of requiring proof of negligence when "[t]he idea of negligence as an essential to recovery is generally foreign to the theory of workmen's compensation[,]" Cuellar v. American Employers' Ins. Co., 36 N.M. 141, 143, 9 P.2d 685, 686 (1932), the New Mexico Supreme Court originally interpreted New Mexico's statutory version of the going-and-coming rule to require proof of the employer's negligence in order to obtain coverage for a worker who was injured while going from work even though the worker remained on the employer's premises. Id. at 145, 9 P.2d at 687.

10. However, prior case law interpreting New Mexico's going-and-coming rule in this manner was overruled by the New Mexico Supreme Court in 1987, when New Mexico joined its sister states in extending workers' compensation coverage to injuries sustained while going to and from work on the employer's premises without requiring proof of the employer's negligence. See Dupper, 105 N.M. at 506-07, 734 P.2d at 746-47. The Dupper Court held that a worker, "while on the employer's premises coming to or going from the actual workplace is in a place where the employee is reasonably expected to be, and that he is engaged in a necessary incident of employment." Id. at 506, 734 P.2d at 746. Subsequent decisions have explored the boundaries that the WCA ascribes to an employer's premises. See Lovato v. Maxim's Beauty Salon, 109 N.M. 138, 782 P.2d 391 (Ct.App.1989) (WCA covers injuries sustained while traveling to workplace

from parking lot designated by employer for employee's use); *Garcia v. Mount Taylor Millwork, Inc.,* 111 N.M. 17, 801 P.2d 87 (Ct. App.1989) (WCA covers injuries sustained at off-premises railway crossing that provided the only means of ingress and egress to employer's premises); *Evans v. Valley Diesel,* 111 N.M. 556, 807 P.2d 740 (1991) (WCA covers injuries sustained while moving worker's vehicle from employer's premises so premises could be secured for the night); *Constantineau v. First Nat'l Bank,* 112 N.M. 38, 810 P.2d 1258 (Ct.App.1991) (WCA does not cover injuries sustained while traveling to workplace from off-premises parking lot not specifically designated by employer for employee's use).

11. No one disputes that Espinosa's injuries in the present case occurred while he was on his way to work. However, Espinosa's injuries occurred so far from the Company's premises that they seem not to fit within any of the traditional variations of the premises exception to the going-and-coming rule. *Cf.* 1 Larson, *supra* § 15 (discussing exceptions for employer's premises and parking lots, travel between two portions of employer's premises, travel during lunch or rest periods, and special hazards).

■ 12. Nonetheless, we agree with the Company that the case authorities establishing exceptions to the "employer's negligence" requirement in New Mexico's statutory version of the going-and-coming rule do not permit us to ignore the language in Section 52–1–19 regarding "the employer's negligence." Rather, we conclude that *Dupper* and its progeny have adopted and followed the concurring opinion in *Cuellar,* 36 N.M. at 146–47, 9 P.2d at 688 (Watson, J., concurring in result), which advocated a more far reaching approach to Section 52–1–19 that would make the WCA a worker's exclusive remedy in any going-and-coming situation, regardless of time, place or circumstances, as long as the injury was caused by the employer's negligence. Under this approach, a worker's injury which occurs while going to or coming from work falls within "the course of employment" solely because it was caused by his or her employer's negligence.

■ 13. Our Supreme Court's prior interpretations of Section 52–1–19 lead us to the inescapable conclusion that injuries sustained while going to or from work may be brought within the statutory definition of "course of employment" by showing that these injuries were caused by the employer's negligence, even when the injuries occurred off-premises. *See Mountain States Tel. & Tel. Co. v. Montoya,* 91 N.M. 788, 791, 581 P.2d 1283, 1286 (1978) (WCA provides exclusive remedy for injuries sustained while going to or from work where worker alleges his employer was negligent). Because there is no dispute that the injuries sustained by Espinosa while going to work were caused by the negligence of an on-duty co-worker driving the Company's van on a "mail run," we are compelled to hold that Espinosa's injuries arose "out of and in the course of employment" under the terms of Section 52–1–19.

## C. *The Dual Persona Doctrine*

■ 14. Espinosa contends that even if we interpret Section 52–1–19 to cover any going-and-coming situation involving an employer's negligence, the exclusivity provisions in Section 52–1–9 should not apply in this case because the person who caused Espinosa's injury cannot be considered Espinosa's "employer." Espinosa asks us to limit the meaning of "employer," as that term is used in Section 52–1–19, by construing it to include an exception to the WCA's exclusivity provisions known as the "dual persona doctrine." We decline to do so under the facts of this case.

■ 15. New Mexico Courts have adopted the dual-persona doctrine and rejected a related theory known as the "dual-capacity doctrine." *See Salswedel v. Enerpharm, Ltd.,* 107 N.M. 728, 731, 764 P.2d 499, 502 (Ct.App.1988). "Under the dual-persona doctrine, an employer may be treated as a third party, vulnerable to a tort suit by an employee, if, and only if, the employer possesses a second persona sufficiently independent from and unrelated to its status as employer." *Garrity v. Overland Sheepskin Co.,* 121 N.M. 710, 720, 917 P.2d 1382, 1392 (1996) (citing *Salswedel,* 107 N.M. at 731, 764

P.2d at 502); *see also* 2A Larson, *supra* § 72.81. In contrast, "[t]he 'dual capacity' doctrine imposes liability outside the workers' compensation statutes where the facts show that employer's conduct contributed to the injury sustained and is conduct of a nature not associated with the employer's functions as an employer." *Salswedel*, 107 N.M. at 730–31, 764 P.2d at 501–02 (citing 2A Larson, *supra* § 72.81(a)).

■ 16. The dual-persona doctrine typically applies in situations where the injury results from a single transaction and "[t]he effort is to subdivide the employer into two persons in relation to that transaction." 2A Larson, *supra* § 72.88; *see, e.g., Garrity*, 121 N.M. at 720–21, 917 P.2d at 1392–93 (remanding for factual determination of whether employer's predecessor-in-interest became independent supplier as a result of change of ownership); *Salswedel*, 107 N.M. at 731, 764 P.2d at 502 (remanding for factual determination of whether partnership in which employer participated could be considered worker's employer). However, one variation of this doctrine extends to "dual transactions" where a worker is involved in two transactions with the same person: one involving his work for his employer, and the other involving an injury that is entirely unrelated to his employment except for the fact that it happens to be caused by the same person who employs him. 2A Larson, *supra* § 72.88.

17. New Mexico courts have noted, in dicta, two examples which fall under this dual-transaction concept. First, in *Cuellar*, 36 N.M. at 142–43, 9 P.2d at 685–86, the New Mexico Supreme Court discussed the example of "a workman who had left his duties, was on his way home, and was injured by being negligently struck by the employer's automobile, driven by a chauffeur, conveying the employer's wife to keep a social engagement." Second, in *Salswedel*, 107 N.M. at 731, 764 P.2d at 502 (quoting *Hernandez v. Home Educ. Livelihood Program, Inc.*, 98 N.M. 125, 128, 645 P.2d 1381, 1384 (Ct.App. 1982)), this Court offered another example of what Professor Larson would deem a "dual transaction": an employee is injured in " 'an automobile accident in which the employer,

while returning from church, runs into the employee who is on his way to a baseball game....' " *Id.* The *Salswedel* Court categorized its example of a dual transaction under the dual-personal doctrine, and not under the dual-capacity doctrine, which the Court rejected. *Id.*

18. We conclude that neither the traditional dual-persona doctrine nor the dual-transaction concept apply to the facts of this case. The traditional dual-persona doctrine does not apply because there is no evidence of differences in corporate form or ownership which might have transformed the Company into a separate persona as argued in *Garrity* or *Salswedel*. The dual-transaction concept does not apply because Espinosa's October 22, 1991, accident was not a separate transaction that was entirely unrelated to Espinosa's duties at work. Unlike the examples discussed in *Cuellar* or *Salswedel*, the Company employee who caused Espinosa's injuries was on-duty performing a "mail run" for the Company in the Company's van at the time of the accident, and Espinosa was on his way to work at that time.

### III. CONCLUSION

19. We recognize Espinosa's contention that the circumstances of the accident—*occurring some two miles away from the premises, on a cross-walk located on a public roadway, and approximately 30 minutes prior to the beginning of his shift*—are too remote in time and place so as to invoke the exclusive jurisdiction of the WCA. However, our Supreme Court precedent compels us to affirm the rulings of the district court and the WCJ which conclude that the WCA provides the exclusive remedy for the injuries sustained in Espinosa's accident of October 22, 1991.

20. **IT IS SO ORDERED.**

BOSSON, J., concurs.

DONNELLY, J., specially concurs.

DONNELLY, Judge (Specially Concurring).

21. I concur in the result. I write separately, however, because I believe the majori-

ty's expressed disagreement with our Supreme Court's statutory interpretation in *Dupper v. Liberty Mutual Insurance Co.,* 105 N.M. 503, 734 P.2d 743 (1987), is misdirected.

22. The majority opinion states that it disagrees with *Dupper* and that it does not believe the legislature intended the language of the "going and coming" set forth in NMSA 1978, Section 52–1–19 (Repl.Pamp.1991) to apply to injuries such as those sustained by Worker here. My disagreement with this conclusion lies in its suggestion that the appropriate remedy is for the Supreme Court to revisit and modify the holding in *Dupper,* rather than suggest legislative amendment. Courts should avoid efforts to modify legislative policy and enactments by judicial decisions. *See Gutierrez v. City of Albuquerque,* 121 N.M. 172, 177, 909 P.2d 732, 737 (Ct. App.) (courts cannot change statutory language or construe statute to mean something other than what the statute provides), *cert. granted,* 120 N.M. 828, 907 P.2d 1009 (1995).

23. This Court has recently noted in *Gutierrez* that "in the workers' compensation context ... certain situations call for legislative therapy, not judicial surgery." *Id.* at 178, 909 P.2d at 738; *see also Johnson Controls World Servs., Inc. v. Barnes,* 115 N.M. 116, 122, 847 P.2d 761, 767 (Ct.App.1993) (modification or departure from language of exclusivity statute rests with the legislature and not the courts).