2000-NMCA-011

995 P.2d 1043

Nancy RAMIREZ, as Personal Representative of the Estate of Jose Ramirez, Deceased, Worker–Appellee/Cross–Appellant,

v.

DAWSON PRODUCTION PARTNERS, INC., and Liberty Mutual Insurance Company, Employer/Insurer–Appellants/Cross–Appellees.

Gabriel Alvarez, Worker–Appellee/Cross–Appellant,

v.

Dawson Production Partners, Inc., and Liberty Mutual Insurance Company, Employer/Insurer–Appellants/Cross–Appellees.

and

Jesus Cervantes, Worker–Appellant,

v.

Dawson Production Partners, Inc. and Liberty Mutual Insurance Company, Employer/Insurer–Appellees.

Nos. 19,918, 19,919, 19,921.

Court of Appeals of New Mexico.

Jan. 11, 2000.

Timothy J. Cusack, Cusack, Jaramillo, Romero & Assoc., P.C., Roswell, for Worker–Appellee/Cross–Appellant Ramirez.

Royce E. Hoskins, Trenchard & Hoskins, L.L.P., Roswell, for Worker–Appellee/Cross–Appellant Alvarez and Worker–Appellant Cervantes.

Thomas D. Haines, Jr., Rebecca A. Zuschlag, Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P., Roswell, for Employer/Insurer–Appellants/Cross–Appellees.

## OPINION

BUSTAMANTE, Judge.

{1}   This case requires us to examine the scope of workers' compensation coverage for workers whose work takes them away from home and who are injured while away from home for their employment. We address appeals from a consolidated case before the Workers' Compensation Administration in which three oil field workers injured in an automobile accident between their work site and their homes sought workers' compensation benefits for their injuries. The Workers' Compensation Judge (WCJ) applied the "traveling employee exception" to the "going and coming rule" in awarding benefits to two of the workers but denying benefits to the third. The WCJ ordered that the compensation awards to the two workers be reduced by 30% and 15%, respectively, based on the workers' violations of certain company safety policies and statutory regulations. We affirm in part, reverse in part, and remand with instructions.

## FACTS

{2}   On August 4, 1997, Jose Ramirez, Gabriel Alvarez, and Jesus Cervantes were working as roustabouts, or roughnecks, for Dawson Production Partners, Inc. (Dawson), which operates an oil field well-servicing business. Ramirez, Alvarez, and Cervantes were part of a "pulling unit" crew, the pulling unit being the mobile rig assembly. Dawson's pulling unit crews consisted of two floor hands, a derrick man, and a rig operator, who oversaw the work of the other crew members. Two such crews, including the one to which Ramirez, Alvarez, and Cervantes were assigned, were working in Mentone, Texas, on a "fishing" operation; that is, they were working to try to retrieve tubing and wire that were stuck in a drill hole. Mentone, Texas, is approximately ninety miles from Hobbs, New Mexico, where the workers' lived and where Dawson maintained its home office.

{3}   When Dawson began the fishing operation in Mentone in March 1997, it expected the job to take approximately two weeks. Dawson provided crew members $50 per day, with which they could pay for lodging and meals in the nearby towns of Kermit or Pecos, Texas, and $6.50 per day for travel, including the day of the car accident, for the approximately one-half hour trip each way between the workers' lodgings and the oil field. Everyone understood the purpose of the per diem money; most used it to stay at a motel in Pecos. But workers were not directed specifically on how they were to spend the money, and they received the money even if they did not stay in Pecos on work nights. Dawson also initially provided transportation between Mentone and Hobbs on the workers' days off.

{4}   The job took much longer than originally expected, and safety became a concern as the two crews worked around the clock with little time off. Sometime before July 1, 1997, Lilo Quiroz, one of the rig operators at Mentone, and Lonnie Stuward, Dawson's Operations Manager in Hobbs, agreed that crews in Mentone should have an extra member in order for crew members to establish a rotating schedule of regular days off. The idea was that workers would be more well rested and therefore safer as a result of having regularly scheduled days off. In exchange for the extra crew member, however, workers would have to provide their own transportation between Mentone and Hobbs.

{5} On August 4, 1997, Ramirez, Alvarez, and Cervantes finished their shift on the pulling unit crew at 5:00 p.m. MDT. Their supervisor, Lilo Quiroz, drove them from the rig site to Mentone, where the three got into a pickup truck Ramirez had borrowed from his cousin. They set out for Hobbs, stopping for a six pack of beer along the way. Five miles north of Kermit, Texas, the truck's left rear tire blew while the truck was traveling at over eighty miles per hour. Ramirez, the driver, lost control of the truck. It swerved and skidded and rolled at least three times before coming to rest on the side of the road. All three workers were ejected from the truck and seriously injured. Ramirez died as a result of his injuries. None of the three was wearing a seat belt, although the seat belt where Alvarez was sitting was broken. All had drunk beer, but none had a significant blood-alcohol concentration. The WCJ found the levels of blood alcohol to be "very low."

{6} After a hearing, the WCJ awarded benefits to Ramirez' estate and to Alvarez, based on the conclusion that Ramirez and Alvarez, as traveling employees, were injured within the course and scope of their employment while traveling to Hobbs. She denied benefits to Cervantes, however, because she concluded he was outside the scope of his employment.

## DISCUSSION

{7} Under New Mexico's Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 1999) (the Act), workers injured while traveling between home and work are generally not eligible for compensation. *See* § 52–1–19 (excluding from compensation "injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties"). In this respect, the Act codifies what is commonly known in workers' compensation law as the "going-and-coming rule." *See Espinosa v. Albuquerque. Publ'g Co.,* 1997–NMCA–072, ¶ 8, 123 N.M. 605, 943 P.2d 1058. "This rule arises from the recognition that, 'while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compen-

sation was not intended to protect him against all the perils of that journey.' " *Id.* (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 15.11 (1996)). The going-and-coming rule is subject to a number of exceptions, though, as we have recognized on several occasions. *See Espinosa,* 1997–NMCA–072, ¶ 8, 123 N.M. 605, 943 P.2d 1058 ("Off-premises injuries sustained while going to or from work are not covered under the [Act] unless they fit within one of several specific exceptions to the going-and-coming rule."); *see also Barton v. Las Cositas,* 102 N.M. 312, 315, 694 P.2d 1377, 1380 (Ct.App.1984) ("If the employee's work creates the necessity for the travel, then any injury during travel (except for that governed by the 'going and coming rule') is compensable."). One of those exceptions—the "traveling-employee" exception—is at issue in this case.

{8} Before discussing the traveling-employee rule in detail, however, we think it necessary to address Dawson's argument that our Legislature's rejection of the rule of liberal construction of the Act in favor of workers precludes us from adopting the traveling-employee rule in this case. *See* NMSA 1978, § 52–5–1 (1989) ("It is the specific intent of the legislature that benefit claims cases be decided on their merits and that the common law rule of 'liberal construction' based on the supposed 'remedial' basis of workers' benefits legislation shall not apply in these cases."). We do not agree with Dawson's contention. Liberal construction was "but one of many tools employed by our appellate courts in construing workers' compensation legislation. Liberal construction has historically been tempered by attention to legislative intent and balanced against sound reason and policy. Fundamental fairness to both the workers and employers has long been a guideline." *Garcia v. Mt. Taylor Millwork, Inc.,* 111 N.M. 17, 19, 801 P.2d 87, 89 (Ct.App.1989) (citation omitted). "Section 52–5–1 [simply] calls for a balanced and evenhanded construction of the Workers' Compensation Act." *Gomez v. B.E. Harvey Gin Corp.,* 110 N.M. 100, 102, 792 P.2d 1143, 1145 (1990).

{9} As our discussion below indicates, the traveling-employee rule recognizes that the conditions faced by employees working "on the road," away from home and away from their employer's home office, are sufficiently different from the conditions faced by employees merely going to or from their local place of employment on a daily basis to warrant a distinct rule. We need not construe the Act liberally to apply a rule appropriate to the circumstances in which Dawson and its employees working at Mentone found themselves at the time of the accident. Instead, evenhanded construction of the Act requires us to recognize the conditions traveling employees face. *Cf. Iliaifar v. SAIF Corp.*, 160 Or.App. 116, 981 P.2d 353, 356 (1999) (noting Oregon's longstanding recognition of exceptions to going-and-coming rule without reference to passage in 1995 of Or. Rev.Stat.Ann. § 656–012(3) (Supp.1998) abrogating liberal construction of Oregon's workers' compensation statute).

{10} Dawson also argues that we have already rejected the traveling-employee exception with our decision in *Arias v. AAA Landscaping*, 115 N.M. 239, 849 P.2d 382 (Ct.App.1993), implicitly acknowledging our ability to adopt the traveling-employee exception despite the Legislature's direction that courts not construe the Act liberally. We concede that the facts in *Arias* bear some similarity to the facts in this case. *See id.* at 239–40, 849 P.2d at 382–83. However, in *Arias* we were concerned with three distinct exceptions to the going-and-coming rule: the "employer's conveyance exception," *see id.* at 240, 849 P.2d at 383 (citing 1 Arthur Larson, *Larson's Workers' Compensation Law* § 17.00 (1992)); the "special errand exception," *see id.* (citing *Edens v. New Mexico Health & Soc. Servs. Dep't*, 89 N.M. 60, 547 P.2d 65 (1976); *Avila v. Pleasuretime Soda, Inc.*, 90 N.M. 707, 568 P.2d 233 (Ct. App.1977)); and the "dual purpose exception," *see id.* at 241, 849 P.2d at 384 (citing and quoting *Wilson v. Rowan Drilling Co.*, 55 N.M. 81, 92, 227 P.2d 365, 372 (1950)); *cf. Clark v. Electronic City*, 90 N.M. 477, 480–81, 565 P.2d 348, 351–52 (Ct.App.1977) (discussing development of dual-purpose doctrine in New Mexico). *Arias* does not discuss the traveling-employee exception at all,

and we adhere to the rule that cases are not authority for propositions they do not consider. *See Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993). We therefore turn to the traveling-employee exception and its applicability in this case.

*The Traveling–Employee Exception*

{11} "The general rule is that an employee whose work entails travel away from the employer's premises is, in most circumstances, under continuous workers' compensation coverage from the time he leaves home until he returns." *Voight v. Rettinger Transp., Inc.*, 306 N.W.2d 133, 136 (Minn.1981); *see also* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 25.01 (1999). Stated otherwise,

> An employee who is taken away from home by his or her employment and who of necessity must eat and sleep away from home in order to further the employer's business may be considered to be in the continuous employment of the employer, day and night. In such a case, " '[i]t can not [sic] be said that the employment is broken by mere intervals of leisure such as those taken for a meal.' "

*Boyd Bros. Transp. Co. v. Fonville*, 237 Ga. App. 721, 516 S.E.2d 573, 574 (1999) (citing and quoting *McDonald v. State Highway Dep't*, 127 Ga.App. 171, 192 S.E.2d 919, 922–23 (1972)) (first alteration in original) (citation omitted). A traveling employee is not simply one who must travel significant distances to and from his job, however. "Traveling employees are employees for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace." *Boyce v. Potter*, 642 A.2d 1342, 1343 (Me.1994).

{12} "The rationale behind the traveling employee rule is that an employee who is required to travel away from home is furthering the business of his employer as he eats, sleeps, and performs other acts necessary to his health and comfort during his travels." *Olinger Constr. Co. v. Mosbey*, 427 N.E.2d 910, 915 (Ind.Ct.App.1981). In addi-

tion, "[w]here the employment requires travel, the employee is consequently exposed to hazards [he or] she would otherwise have the option of avoiding. Thus the hazards of the route become the hazards of the employment." *Appeal of Griffin*, 140 N.H. 650, 671 A.2d 541, 544 (1996) (quoting *Whittemore v. Sullivan County Homemaker's Aid Serv.*, 129 N.H. 432, 529 A.2d 919, 921 (1987)) (internal quotation marks omitted) (second alteration in original). But,

> [i]t is not merely travel on a highway that creates a risk of compensable injury; if that were so, every ordinary commuter would be covered under the Act. Rather, it is the job's requirement of travel and the employer's authority and control in assigning its employees to different work sites that increase the normal risk and render compensable ... injur[ies] suffered during such travel.

*Boyce*, 642 A.2d at 1344. In this respect, traveling employees have been regarded as having a "*sui generis* status since their work necessarily requires that they be away from home." *Voight*, 306 N.W.2d at 138.

■ {13} We note that some jurisdictions have extended coverage to injuries a traveling employee suffers during "leisure" activities, other than eating or sleeping, while away from home. *See, e.g., Arkansas Dep't of Health v. Huntley*, 12 Ark.App. 287, 675 S.W.2d 845, 848–49 (1984) (extending coverage to woman injured by intoxicated stranger while returning to her motel room from motel's bar); *Bagcraft Corp. v. Industrial Comm'n*, 302 Ill.App.3d 334, 235 Ill.Dec. 736, 705 N.E.2d 919, 923 (1998) (injuries from an all-terrain vehicle accident covered); *Proctor v. SAIF Corp.*, 123 Or.App. 326, 860 P.2d 828, 831–32 (1993) (injuries suffered during basketball game covered). The reason for extending coverage to some injuries incurred during recreational activities is that employers should expect their traveling employees to engage in some sort of recreation while on the road. *See Bagcraft Corp.*, 235 Ill.Dec. 736, 705 N.E.2d at 921. Moreover, given the rationale behind the exception, it would make little sense to provide coverage for traveling employees only while they are actually performing the duties of their jobs. *See id.*

Thus, "[a] traveling employee may satisfy a physical need for recreation even if the job does not cause stress, and even if the employee chooses an activity that is not related to work. As the cases show, most traveling employees relax through activities that have little relationship to work." *Proctor*, 860 P.2d at 831.

■ {14} Coverage for traveling employees injured while away from home is not limitless, however. While a traveling employee is considered to be acting within the scope of his or her employment while on the road, one seeking compensation for an injury must still demonstrate that the injury "arose out of and in the course of employment." *See Jensen v. Industrial Comm'n*, 305 Ill. App.3d 274, 238 Ill.Dec. 468, 711 N.E.2d 1129, 1132–33 (1999); *see also Kolson v. District of Columbia Dep't of Employment Servs.*, 699 A.2d 357, 360–61 (D.C.1997); NMSA 1978, § 52–1–28(A)(1). The phrase "in the course of," we have previously noted, "refers to the time, place, and circumstances under which the injury occurred." *Gutierrez v. Amity Leather Prods. Co.*, 107 N.M. 26, 29, 751 P.2d 710, 713 (Ct.App.1988). In contrast, "[a]n injury arises out of the employment when it is 'caused by a risk to which the worker is subjected in the employment.' " *Sena v. Continental Cas. Co.*, 97 N.M. 753, 755, 643 P.2d 622, 624 (Ct.App.1982) (quoting *Losinski v. Drs. Corcoran, Barkoff & Stagnone, P.A.*, 97 N.M. 79, 80, 636 P.2d 898, 899 (Ct.App.1981)). "For an injury to 'arise out of' the employment, there must be a showing that the injury was caused by a risk to which the plaintiff is subjected by reason of his employment." *Gutierrez*, 107 N.M. at 29, 751 P.2d at 713. "Typically, an injury 'arises out of' a claimant's employment if, at the time of the occurrence, the claimant was performing acts the employer instructed the claimant to perform, acts incidental to the claimant's assigned duties, or acts which the claimant had a common law or statutory duty to perform." *Jensen*, 238 Ill.Dec. 468, 711 N.E.2d at 1132. Determining whether a worker's injury arose out of his employment is a question of fact. *See Cox v. Chino Mines/Phelps Dodge*, 115 N.M. 335, 337, 850 P.2d 1038, 1040 (Ct.App.1993). "However,

where the historical facts of the case are undisputed, as in this case, the question of whether the accident arose out of the employment is a question of law." *Id.*

{15} Several jurisdictions have held that the requirements that an injury arise out of and in the course of employment are met if the traveling employee was injured while engaging in an activity that was both reasonable and foreseeable. *See Huntley*, 675 S.W.2d at 848; *Bagcraft*, 235 Ill.Dec. 736, 705 N.E.2d at 921; *Voight*, 306 N.W.2d at 138. Other jurisdictions have held that a traveling employee is covered unless he was injured during a distinct departure from his employment for a personal errand. *See Eversman v. Concrete Cutting & Breaking*, 224 Mich.App. 221, 568 N.W.2d 387, 389 (1997); *see also Evans v. Workmen's Compensation Appeal Board (Hotwork, Inc.)*, 664 A.2d 216, 219 (Pa.Cmwlth.1995) (allowing employer to rebut presumption that traveling employee was furthering employer's business by proving "that the claimant's actions were so foreign to and removed from his usual employment as to constitute an abandonment thereof"). These tests are fine, as far as they go. But they can put an undue burden on employers. *Cf. Voight*, 306 N.W.2d at 135, 138 (reversing denial of compensation to claimant who was accidentally shot by intoxicated fellow employee "attempt[ing]" to generate some excitement" because claimant's trip to the bar "for recreational purposes was a reasonable activity and therefore incident to the employment relationship").

{16} At least one of the jurisdictions that employs the reasonable-and-foreseeable test has sought to limit the test's reach by imposing an additional requirement for compensation. The Illinois Appellate Court recently held that an injury incurred in an otherwise reasonable and foreseeable recreational activity will not be compensable if the activity was conducted in an unreasonable or unforeseeable manner. *See Jensen*, 238 Ill.Dec. 468, 711 N.E.2d at 1133. We agree that this should be part of the analysis. We also join those jurisdictions that hold that the activity giving rise to the injury must

confer some benefit on the employer; that it must be reasonably related or incidental to employment. *See Benson v. Colorado Compensation Ins. Auth.*, 870 P.2d 624, 627 (Colo.Ct.App.1994) (holding that the traveling-employee exception applies, in part, "when the travel confers a benefit on the employer beyond the sole fact of the employee's arrival at work"); *Kolson*, 699 A.2d at 361 ("[W]hen a traveling employee is injured while engaging in a reasonable and foreseeable activity that is reasonably related to or incidental to his or her employment, the injury arises in the course of employment."); *Indiana & Mich. Elec. Co. v. Morgan*, 494 N.E.2d 991, 994 (Ind.Ct.App.1986) ("Activities which advance, either directly or indirectly, an employer's interests or are for the mutual benefit of the employer and employee may be incidental to and arise in the course of employment."). This is consistent with our position in earlier cases "that an injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Kloer v. Municipality of Las Vegas*, 106 N.M. 594, 597, 746 P.2d 1126, 1129 (Ct.App.1987); *accord Garcia v. Homestake Mining Co.*, 113 N.M. 508, 511, 828 P.2d 420, 423 (Ct.App. 1992); *cf. Evans v. Valley Diesel*, 111 N.M. 556, 559, 807 P.2d 740, 743 (1991) (reversing this Court's denial of compensation and citing *Kloer* for the proposition that the employee's injury arose out of his employment because his employer derived intangible benefit from the activity the employee was engaged in when injured).

{17} In sum, we hold that one whose work not only requires him to travel but for whom travel is an integral part of his employment is within the scope of employment continuously while traveling, and may therefore be eligible for workers' compensation benefits as a traveling employee for injuries he sustains while away from home. The injury must, however, arise out of and in the course of employment, which means that it must occur during the commission of an activity that is reasonable and foreseeable

both as to its nature and manner of commission, and must be of some benefit to the employer. The benefit to the employer need not be pecuniary, and may be as intangible as a well-fed and well-rested employee.

{18}   In this case, the WCJ applied the correct test in deciding whether to award benefits to Ramirez, Alvarez, and Cervantes. The WCJ found that the trip by Ramirez arose out of and in the course of his employment because the primary purposes of the trip were (1) to transport Alvarez to Hobbs so that Alvarez could begin his scheduled days off; and (2) to transport dirty uniforms, in part at the request of his supervisor, Lilo Quiroz, for laundering at the Hobbs yard the next day. These were both reasonable and foreseeable, and they benefitted Dawson by helping to ensure that Alvarez would be rested when he returned to work and that those whose uniforms Ramirez was transporting for laundering would have uniforms that met industry standards for safety. Thus, the WCJ properly awarded compensation to Ramirez' estate.

{19}   About the awarding of benefits to Alvarez, little needs to be said. He was returning to Hobbs to begin his days off, as would be expected. The benefit to Dawson is exactly what was contemplated by the 1997 agreement: having a well-rested employee. And Alvarez arranged for a ride in a co-worker's vehicle, as was necessary under the 1997 agreement. We note, as did the WCJ, that the 1997 agreement between Lilo Quiroz and Lonnie Stuward conferred an incidental benefit on Dawson, saving it the expense of using one of its vehicles to transport workers back and forth from Hobbs to Mentone. The WCJ properly awarded compensation to Alvarez.

{20}   The WCJ concluded Cervantes' injuries were not compensable because they did not arise out of and in the course of his employment. Although Cervantes was also taking his uniforms to Hobbs for cleaning, it was not necessary for him to accompany Ramirez and Alvarez, insofar as they were making the trip and transporting uniforms anyway. Regarding the other reason Cervantes offered for going along on the trip—to keep Ramirez company on the return trip the following morning—the WCJ concluded that conferred no benefit on Dawson and that Cervantes was therefore not entitled to compensation benefits. We agree. Traveling back and forth from Mentone to Hobbs too frequently would have exposed workers to the very safety risk Dawson sought to remedy by encouraging workers to stay in the Mentone area—insufficient rest. We therefore hold that the WCJ properly denied benefits to Cervantes.

*The WCJ's Reduction of Workers' Benefits*

{21}   As we noted at the outset, despite awarding compensation benefits to Ramirez and Alvarez, the WCJ concluded that their compensation awards should be reduced because both had consumed alcohol during the drive and neither was wearing a seat belt. Specifically, the WCJ ordered a 10% reduction in benefits for both Ramirez and Alvarez for consuming alcohol during the drive, and ordered an additional 10% reduction in Ramirez' benefits for failing to wear a seat belt, but only an additional 5% reduction in Alvarez' benefits for failing to wear a seat belt, because the seat belt where he was sitting was inoperative. Finally, the WCJ ordered that Ramirez' benefits be further reduced by 10% because he was speeding at the time of the accident.

{22}   The Act does provide for a reduction in compensation to an injured worker under certain circumstances:

In case an injury to, or death of, a worker results from his failure to observe statutory regulations appertaining to the safe conduct of his employment or from his failure to use a safety device provided by his employer, then the compensation otherwise payable under the ... Act ... shall be reduced ten percent.

Section 52-1-10(A). By the terms of the statute, in order for a reduction to be appropriate the employee's statutory violation or failure to use a safety device must have *caused* his injury. "In the absence of a showing of causation, no issue of entitlement to the penalty is raised." *Boughton v. Western Nuclear, Inc.*, 99 N.M. 723, 726, 663 P.2d 382, 385 (Ct.App.1983).

{23} With respect to Ramirez' and Alvarez' consumption of alcohol and failure to wear seat belts, the record is devoid of evidence that those factors caused their injuries. In fact, the WCJ specifically found that "Mr. Ramirez's consumption of alcohol did not contribute to the accident in which he was injured"; that the accident due to a blown tire might well have occurred even if the workers had not had any alcohol to drink. On the use of seat belts, Dawson does not point to any evidence, nor have we found any, to indicate that the workers' failure in this regard caused their injuries. Instead, Dawson argues that "as a matter of common sense" the workers were ejected from the vehicle because they were not wearing seat belts, which "*tends* to lead to enhanced injuries." Dawson also argues that the WCJ made an "implicit finding" that Ramirez' and Alvarez' failure to wear seat belts was a cause of their injuries. Of course, an implicit finding of causation is not a showing of causation. Dawson simply failed to present any evidence showing enhanced injury due to nonuse of seat belts, and we reject Dawson's invitation to speculate to that effect.

{24} The WCJ reduced Ramirez' and Alvarez' compensation awards nonetheless based on the finding that their consumption of alcohol and their failure to wear seat belts were in violation of Dawson's safety policies. But Section 52–1–10(A) does not provide for a reduction in benefits when an employee simply violates company policies in the absence of evidence that the violation caused the injury, which Dawson did not produce. The WCJ was therefore incorrect in reducing Ramirez' and Alvarez' compensation awards on that basis. We reverse two of the 10% reductions for Ramirez. We also reverse the 15% reduction for Alvarez and note that, not only does Section 52–1–10(A) not provide for a 5% reduction in benefits, we also think it improper to penalize a worker for violating a regulation or failing to use a safety device (the non-operational seat beat) when the violation or failure was beyond his control.

{25} In contrast, the WCJ found, based on the opinions of the officer who investigated the accident, that excessive speed was one of the causes of the accident. For a traveling employee who is driving while in the course and scope of his employment, observing the posted speed limit is a "statutory regulation[ ] appertaining to the safe conduct of his employment." Section 52–1–10(A). Thus, in light of the WCJ's findings that speeding was a contributing cause of the accident (and therefore the injuries), it was proper to reduce Ramirez' compensation award by 10%. As a mere passenger, Alvarez is not affected by this ruling. Because of our disposition of the other two reductions to Ramirez' compensation award, we need not decide whether Section 52–1–10(A) authorizes multiple 10% reductions in a single accident for each safety violation or failure to use a safety device.

## CONCLUSION

{26} We affirm the award of compensation to Ramirez and Alvarez based on the WCJ's conclusion that the two were traveling employees injured in the course and scope of their employment. We reverse the WCJ's order of a 15% reduction in Alvarez' compensation award for the reasons discussed above, and hold that Alvarez is not subject to any reduction. We likewise reverse the WCJ's order of a reduction in Ramirez' compensation award, except the 10% reduction based on the findings related to his driving in excess of the posted speed limit. We affirm the denial of benefits to Cervantes. We remand for the entry of a new order consistent with this opinion.

{27}  **IT IS SO ORDERED.**

BOSSON and ARMIJO, JJ., concur.