MOORE, Judge.
Michael Chad McDaniel (“the employee”) appeals from a judgment of the Mobile Circuit Court (“the trial court”) denying his claim for workers’ compensation benefits against Helmerich & Payne International Drilling Company (“the employer”). We reverse.

Procedural History

This is the second time this case has been before this court. See McDaniel v. Helmerich & Payne Int’l Drilling Co., 61 So.3d 1091 (Ala.Civ.App.2010). The employee filed a claim for workers’ compensation benefits stemming from a motor-vehicle accident that occurred on a Mobile County road on January 10, 2008. 61 So.3d at 1092. In McDaniel, this court reversed a summary judgment entered by the trial court in favor of the employer. Id. at 1095. The trial court had concluded that the employee had failed to present substantial evidence indicating that one or more of the exceptions to the “going and coming rule,” which provides that “accidents occurring while a worker is traveling on a public road while going to or coming from work generally fall outside the course of the employment,” applied in the present case. Id. at 1093. This court concluded, however, that, when viewing the evidence in a light most favorable to the employee, there was a genuine issue of material fact regarding whether the facts of the case fell within one of the exceptions to the going and coming rule. Id. at 1095. Upon remand from this court, the employer filed an amended answer asserting affirmative defenses. A trial was held on June 20, 2011. On July 19, 2011, the trial court entered a judgment, which included findings of fact and conclusions of law, finding in favor of the employer based on the going and coming rule and the inapplicability of the exceptions to the rule in the present case. The employee filed his notice of appeal to this court on August 16, 2011.

Facts

The employee testified that he began working for the employer, a drilling contractor, in May 2007 and that, at the time of the accident on January 10, 2008, he was living in Alexandria, Louisiana. The employee testified that the employer is hired by oil companies to drill holes or wells or to place pipes to open wells that have already been drilled. The employee testified that, when he was at work, he was on location, which meant that he stepped out of an on-site trailer and went straight to work. He testified that he was assigned to wherever his rig was drilling a well and *43 that the rig crews go and set up the rig to drill. The rig crews then drill down to wherever the well is going to be stopped, and then they remove the rig and go to the next location set up for drilling.
The employee testified that he began working for the employer as a floor hand, or a “roughneck,” which required him to take care of the rig, maintaining it and keeping it clean and free of hazards. He testified that he was a roughneck for about 2 7-day “hitches,” which consist of 7 12-hour “tours,” or shifts, and that the crew would work for 7 days and then have 7 days off. The employee was then promoted to the position of “motor man,” which required him to take care of all the transfer of fluids, like fuel and diesel, to run the generators to power the rig; to cheek the oil in all the motors to make sure they did not go down; to check air bladders and drain the air tanks for air compressors for the rig; and to do inspections for the tool pusher, or rig manager, of the equipment on the rig. The employee testified that, in addition to being paid for the 12-hour tours, he was paid for 2 hours a week for attending safety meetings and another hour each week for attending a weekly safety meeting. He testified that the safety meetings were held every morning before his tour went into effect, that those meetings were mandatory, and that they typically lasted from 15 to 30 minutes.
The employee testified that the employer provided the rig crew with crew trailers to stay in bunks on location because it wanted the crew on the worksite. Additionally, the rig manager is provided a trailer with an office inside, and the oil company’s representatives have their own' trailer outside the rig. Gerald Hay, who is employed by the employer as a rig manager, testified that the employer rents the crew trailers to have them on location. The employee testified that he always stayed in the crew trailers during a 7-day hitch. .
The employee testified that he was normally the motor man for rig 79; that the last location he had been at with rig 79 was an island in Louisiana state water; that rig 79 “went stacked,” or lost its work contract; and that he was then assigned to work on rig 136 in Mobile County on January 9, 2008. On that date, rig 136 and the crew trailers were located at the Hatters Pond Well in Creóla (“the Creóla site”). The employee testified that he drove his personal vehicle from his home in Louisiana to the Creóla site and arrived at approximately 4:00 a.m. on January 9, 2008. The employee testified that he and the remaining rig crew were “rigging down,” or disassembling, rig 136 at the Creóla site and preparing to move the rig to the Mattie May Smith Well in Chunchula (“the Chunchula site”), where they would “rig up,” or reassemble, rig 136 to prepare it for drilling at the new site.
At the end of the day on January 9, 2008, according to the employee, he was told that the crew trailers, which are moved before the rig itself, were being set up at the Chunchula site and to go there to sleep. He testified that he traveled to the Chunchula site, where he stayed in the crew trailer. According to the employee, on the morning of January 10, 2008, he and the other three crew members who had stayed in the trailer were awakened by the driller of his crew at approximately 5:15 or 5:20 a.m., and he stated that they attended a safety meeting conducted by Joe Ishee, the rig manager for rig 136. The employer presented evidence indicating that a safety meeting was not held at the Chunchula site the morning of January 10, 2008, and that the employee had given a recorded statement in which he had said that the safety meeting was going to be held at the Creóla site. The employee *44 testified at trial, however, that the safety-meeting was held at the Chunchula site. He testified that, at the end of the safety meeting, he was instructed to go to the Creóla site and that he left the Chunchula site sometime after 5:30 a.m., traveling to the Creóla site. He testified that, during that trip, it was extremely foggy, he was traveling on a muddy road in the woods, and the conditions were extremely hazardous. According to the employee, upon leaving the Chunchula site, he traveled down a clay road for about a mile or a mile and a half, then traveled about three miles on a gravel road to the blacktop road. He testified that, at the end of the gravel road, his vehicle slid through the stop sign at the end of the road and a three-quarter ton Ford F-350 truck collided with the passenger side of his vehicle, causing him injuries.
The employee admitted that no one working on rig 136 had told him he had to stay in the crew trailer. It was undisputed that the employer did not provide the employee with a vehicle, per diem for food or anything else, mileage or gas reimbursement, a cellular telephone, a pager, or a radio.
Hay testified that he and Ishee spent the night of January 9, 2008, in the tool-pusher trailer at the Chunchula site and that both of them drove to the Creóla site for the safety meeting that morning. According to Hay, the rig crew does not always stay in a crew trailer. He stated that crew members may stay in a motel or at a girlfriend’s house or they may go home to sleep. He testified that, during a previous rig move, when a crew trailer was not available, the employer had paid for the roughnecks to stay in a hotel. He testified that the men traveling from their homes allows the employer to do its job. Hay testified that, if the employee wanted to keep his job with the employer, he was required to travel to work on rig 136 once rig 79 went into “stack.”

Standard of Review

“Section 25 — 5—81(e), Ala.Code 1975, provides the standard of review in a workers’ compensation case:
“ ‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
“ ‘Our review is restricted to a determination of whether the trial court’s factual findings are supported by substantial evidence. Ala.Code 1975, § 25 — 5—81 (e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M & D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995).’
“Landers v. Lowe’s Home Ctrs., Inc., [14] So.3d [144, 151] (Ala.Civ.App.2007). ‘This court’s role is not to reweigh the *45 evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.’ Bostrom Seating, Inc. v. Adderhold, 852 So.2d 784, 794 (Ala.Civ.App.2002).”
MasterBrand Cabinets, Inc. v. Ruggs, 10 So.3d 13, 16-17 (Ala.Civ.App.2008).

Discussion

For an injury to be compensable under the Alabama Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975, the injury must be caused by “an accident arising out of and in the course of [the] employment.” § 25-5-51, Ala.Code 1975. The employee argues on appeal that the trial court erred in concluding that his accident did not arise out of and in the course of his employment with the employer. He asserts, among other things, that, because he was a “traveling employee,” within the meaning of Young v. Mutual Savings Life Insurance Co., 541 So.2d 24 (Ala.Civ.App.1989), the accident, and his resulting injuries, arose out of and in the course of his employment.
In Young, a traveling salesman sustained an injury while on his lunch break. 541 So.2d at 25. This court stated, in pertinent part:
“We have held that accidents occurring on the employer’s premises during an employee’s regular lunch break occur in the course of employment. Gold Kist, Inc. v. Jones, 537 So.2d 39 (Ala.Civ.App.1988). According to Professor Larson, the term ‘premises’ ‘includes the entire area devoted by the employer to the industry with which the employee is associated.’ 1 Larson Workmen’s Compensation Law § 15.41, at 4-84 (1985). Our research, however, has revealed no Alabama cases dealing with the term ‘premises’ as it relates to traveling employees. In the absence of available precedent, we must, therefore, look to other sources for definitive law. Minnesota’s construction of its workmen’s compensation laws serves as a source of persuasive authority in these situations. Buchanan v. Pankey, 531 So.2d 1225 (Ala.Civ.App.1988). Minnesota courts have adopted the view that a traveling employee is considered to be conducting his employer’s business any time he is in his prescribed territory. Gumbrill v. General Motors Corp., 216 Minn. 351, 13 N.W.2d 16 (1944). It appears that the claimant was within his prescribed territory at the time of the accident. It follows then, in light of the foregoing authority, that the claimant was within the course of his employment at the time of the accident.”
Id. at 26.
The employer argues that the employee was not a traveling employee, as was the traveling salesman in Young, or the truck driver at issue in the only other Alabama case directly discussing traveling employees, Cummings Trucking Co. v. Dean, 628 So.2d 902 (Ala.Civ.App.1993). The trial court found that the employee “was not a ‘traveling employee’ as the term is defined under Alabama law.” Although both Young and Dean referred to the workers in those eases as “traveling employees,” neither case defined that term. Thus, we look to other jurisdictions to determine whether the employee in the present case fits the definition of a “traveling employee.”
In Ball-Foster Glass Container Co. v. Giovanelli, 163 Wash.2d 133, 177 P.3d 692 (2008), the Supreme Court of Washington stated:
“There are two widely recognized definitions of a traveling employee. Under Larson’s formulation of the rule, a traveling employee is one ‘whose work en *46 tails travel away from the employer’s premises.’ 2 [Arthur] Larson & [Lex K] Larson, [Larson’s Workers’ Compensation Law ] § 25.01[ (2006) ]. An alternate definition provides: ‘A traveling employee is one whose job requires travel from place to place or to a place away from a permanent residence or the employee’s place of business.’ 2 John P. Ludington, Modem Workers Compensation § 111:15 (Matthew J. Canavan ed., 1993).
“The traveling salesperson and the long-haul truck driver are prototypical examples of traveling employees. However, workers who have no fixed site of employment or whose business is travel are not the only categories of employees who fall within the definition. Traveling employees also include those on temporary assignment at a fixed location.”
163 Wash.2d at 145, 177 P.3d at 698. See also Rodriguez v. Permian Drilling Corp., 150 N.M. 164,168, 258 P.3d 443, 448 (2011) (treating oil-rig workers as “traveling employees,” i.e., “ ‘employees for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace’ ” (quoting Ramirez v. Dawson Prod. Partners, Inc., 128 N.M. 601, 606, 995 P.2d 1043, 1048 (Ct.App.2000))).
We agree with the Washington Supreme Court that a traveling employee is not limited to those who work as a traveling salesperson or a long-haul truck driver, although those are the only two positions to which the “traveling employee” exception has been previously applied in Alabama.
In Rodriguez v. Permian Drilling Corp., supra, the Supreme Court of New Mexico distinguished traveling employees from mere commuters:
“Traveling employees are distinct from ‘mere commuters’ whose injuries are excluded from compensation under the [Workers’ Compensation] Act[, N.M. Stat. Ann. § 52-1-1 et seq.]. See Flores [v. McKay Oil Corp.], 2008-NMCA-123, ¶ 27, 144 N.M. 782, 192 P.3d 777. We imagine a commuter as one who chooses to live in Albuquerque or Tesuque but works in Santa Fe. The commuter has the option of living and working in the same city, but for any number of reasons chooses to travel some distance between home and work. In Flores, the Court of Appeals concluded that the oil rig workers injured while traveling to the rig site were commuters, not traveling employees. The Court of Appeals found that the injuries did not arise out of the employment because the rig was in a fixed location, relatively close to the workers’ residences, and because the employer did not provide any reimbursement or per diem specifically for transportation costs nor require any of the workers to maintain valid licenses or insurance. Id. ¶¶ 22-24, 27[, 144 N.M. at 791-92, 192 P.3d at 786-87]. Traveling employees, in contrast, are those who encounter special hazards on the road that could be avoided were travel not a necessary component of the employment. ...
“The primary reason for the distinction between a commuter and a traveling employee is that travel undertaken by a traveling employee provides substantial benefit to both employee and employer. ‘[T]he activity giving rise to the injury must confer some benefit on the employer.’ Ramirez[ v. Dawson Prod. Partners, Inc.], 2000-NMCA-011, ¶ 16, 128 N.M. 601, [608,] 995 P.2d 1043[, 1050]; see also Kurtis A. Kemper, Application of the ‘Mutual Benefit’ Doctrine to Workers’ Compensation Cases, *47 11 A.L.R.6th 351 Table (2006) (compiling cases). ‘The benefit to the employer need not be pecuniary, and may be as intangible as a well-fed and well-rested employee.’ Ramirez, 2000-NMCA-011, ¶ 17, 128 N.M. 601, [608-09,] 995 P.2d 1043[, 1050-51].
“ ‘The rationale behind the traveling employee rule is that an employee who is required to travel away from home is furthering the business of his employer as he eats, sleeps, and performs other acts necessary to his health and comfort during his travels. In addition, where the employment requires travel, the employee is consequently exposed to hazards she would otherwise have the option of avoiding. Thus the hazards of the route become the hazards of employment. But, it is not merely travel on a highway that creates a risk of compensable injury; if that were so, every ordinary commuter would be covered under the Act. Rather, it is the job’s requirement of travel and the employer’s authority and control in assigning its employees to different work sites that increase the normal risk and render compensable injuries suffered during such travel.’
“Id. ¶ 12[, 128 N.M. at 606-07, 995 P.2d at 1048-49] (internal quotation marks, citation, and alterations omitted).”
150 N.M. at 169-70, 258 P.3d at 448-49.
In Wilson v. Georgia Power Co., 128 Ga.App. 352, 353-54, 196 S.E.2d 693, 694 (1973), the Georgia Court of Appeals noted that the workers at issue in that case “were required by their employment to lodge and work within an area geographically limited by the necessity of being available for work on the employer’s job site, [and] hence were, in effect, in continuous employment, day and night, for the purposes of the Workmen’s Compensation Act[, Ga.Code Ann. § 34-9-1 et seq.].”
The employee in the present case, in order to keep his job, was required by the employer to drive from his home in Alexandria, Louisiana, to report to rig 136 in Mobile County. The employee testified that he worked a 7-day hitch, which consisted of working 12 hours each day for 7 consecutive days. Thus, like in Wilson, the employee was “geographically limited by the necessity of being available for work on the employer’s job site.” 128 Ga.App. at 353-54, 196 S.E.2d at 694. The employee testified that the home office of the employer from which he worked, or his “place of business,” was located in Tulsa, Oklahoma. Regardless of whether he was required to stay in the crew trailer, one was rented and provided by the employer at the site of rig 136 and the employee was invited by the employer to stay in a crew trailer, with an assigned bunk, free of charge. Taking those facts into account, the employee would be considered a “traveling employee” in accordance with the definitions discussed in Wilson and Rodriguez and arguably all three of the definitions discussed in Ball-Foster. We conclude, therefore, that the employee in this case meets the definition of a “traveling employee,” and, like the salesman in Young, he was within the course of his employment at the time of his accident because he was within the' employer’s prescribed territory, specifically, between the two locations at which rig 136 was being used.
In Gumbrill v. General Motors Corp., 216 Minn. 351, 13 N.W.2d 16 (1944), cited by this court in Young, the Supreme Court of Minnesota observed that, although a traveling employee “is considered as carrying on his employer’s business at any time he is in his prescribed territory,” that employee is not covered by the workmen’s *48 compensation act once a special errand or mission begins until that errand is completed. 216 Minn. at 353, 13 N.W.2d at 17. In Young, the salesman in that case stopped along his route to eat lunch; after eating lunch, he got out of his car, noticed some ripe blackberries across the road, and, after crossing the road to look at the blackberries, fell into a ditch parallel to the road and injured himself. 541 So.2d at 26. Citing Gumbrill, this court concluded:
“The possibility of slipping and falling into a roadside ditch is not a hazard peculiar to a traveling salesman. Clearly the claimant, although primarily carrying on his employer’s business, i.e., he continued on his route after the fall, had departed on his own personal enterprise at the time of the injury. Gumbrill v. General Motors Corp., supra. The injury sustained here was, thus, not causally connected with the claimant’s employment.”
541 So.2d at 26-27.
We find the present case distinguishable. The employee in the present case had not departed on his own personal enterprise at the time of the injury. He awoke in the crew trailer provided by the employer at the Chunchula site, where rig 136 would shortly be in operation, and began his drive to the Creola site where rig 136 was being rigged down. His presence in Alabama was beneficial to the employer, and the hazards of the route, which had been specified by the employer by the placement of the crew trailers and the location of the rig, had become the hazards of the employment. Unlike in Young, the injury sustained by the employee was causally connected with the employee’s employment. We conclude, therefore, that the “traveling employee” exception applies in this case and that the trial court erred in concluding otherwise and in denying the employee workers’ compensation benefits. We reverse the trial court’s judgment and remand the case to the trial court to enter a judgment finding that the employee’s accident arose out of and in the course of the employment and to conduct such further proceedings as are necessary to determine the compensation and other benefits due the employee under the Act.[1]
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. Based on our disposition of the appeal, we decline to address the remaining issues raised on appeal.