658 P.2d 449

**Phillip B. GARCIA, Plaintiff-Appellee,**

v.

**PHIL GARCIA'S ELECTRICAL CONTRACTOR, INC., Employer, and Rockwood Insurance Company, Insurer, Defendants-Appellants.**

**No. 5938.**

Court of Appeals of New Mexico.

Dec. 22, 1982.

Certiorari Denied Feb. 15, 1983.

Edwart T. Curran, Howard R. Thomas, Menig, Sager, Curran & Sturges, P.C., Albuquerque, for defendants-appellants.

Robert H. McBride, Albuquerque, Sarah M. Singleton, Santa Fe, for plaintiff-appellee.

OPINION

HENDLEY, Judge.

We granted defendants' application for an interlocutory appeal from an adverse ruling in a bifurcated trial. The sole issue was whether plaintiff's accident arose out of and in the course of his employment as referred to in § 52–1–19, N.M.S.A.1978. We affirm the trial court.

Defendant-Employer, Phil Garcia's Electrical Contractor, Inc. (Corporation), was owned by plaintiff and his wife. Garcia and his wife were sole shareholders, officers, and directors of the Corporation. The Corporation was in the business of residential and commercial electrical contracting. The Corporation also leased the Turf Lounge, a liquor dispensing business, from plaintiff and his wife.

Plaintiff allocated his time between running the contracting business and the lounge. He drew his salary without apportionment to businesses. The contracting business's normal operating hours were from 7:30 a.m. to 5:30 p.m. The lounge was generally open from 7:30 a.m. until 2:00 a.m., except on Sundays, when it opened at noon and closed at midnight.

At all times material to this action, plaintiff had an office in his home. The office was a converted living room, and was used by plaintiff as an office for the contracting business and the lounge.

The day before plaintiff's accident, he arose at about 6:30 a.m. and scheduled his electrical contracting work. He then prepared the previous day's lounge receipts for deposit. At approximately 10:00 a.m. he left home and deposited the receipts. He then drove to some jobsites where his electrical contracting crews were working to check on those jobs. After eating lunch and inspecting some other jobs, plaintiff proceeded to the lounge, arriving at about 4:30 p.m. He changed his shift, then went into his office (at the lounge) to check the orders which had been delivered that day. He then tended bar and waited on custom-

ers at the package window until 2:00 a.m. Next, he cleared the cash registers and stocked the bar, which took until between 3:00 a.m. and 4:00 a.m. Once he had completed stocking, he took inventory, which he completed at 7:00 a.m. He placed the previous day's receipts in the trunk of a 1979 Lincoln, which the Corporation owned, and started for home.

There were no signs or other identifiers on the car to show the Corporation owned it. Plaintiff and his wife owned no personal vehicles; for tax purposes, 25% of car use was ascribed to personal use.

Plaintiff followed his usual route. He was not planning to make a deposit on the way home. He testified that he intended to go home, balance the receipts, make out a deposit slip, dispatch his electrical contracting crews, and then go to sleep. It was his customary practice to dispatch his crews at 7:30 a.m. after 3–4 hours of sleep.

■ On his way home, plaintiff claims he dozed off and went off the road, injuring himself. He testified that at the time of the accident there was nothing wrong with the car.

Section 52–1–19 states:

Injury by accident; course of employment.

As used in the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978], unless the context otherwise requires, "injury by accident arising out of and in the course of employment" shall include accidental injuries to workmen, and death resulting from accidental injury, as a result of their employment and while at work in any place where their employer's business requires their presence, but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which is not the employer's negligence.

Generally, under this section an employee has no compensable claim if he is injured while on his way to assume the duties of his employment or after leaving such duties. *Mountain States Tel. & Tel. Co., v. Montoya,* 91 N.M. 788, 581 P.2d 1283 (1978).

Defendant contends the going and coming rule should be applied, and because of plaintiff's failure to prove employer negligence, he should not receive compensation benefits. To accept this argument, we would have to ignore the gist of § 52–1–19. Defendants emphasize and rely on that portion of § 52–1–19 which states "but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which is not the employer's negligence." That part of the statute is a limiting qualifier on the statute and should not be read as if separate from the whole of the statute.

In the instant case, the qualifier is not applicable. This is because plaintiff was injured while at work in a place where his employer's business required him to be. *See,* § 52–1–19. Defendants' basic argument boils down to the fact that plaintiff had finished work at the bar and was proceeding to work as an electrical contractor and, therefore, was either on his way to assume the duties of his employment or had left the duties of his employment.

■ This argument, however, ignores certain facts. Plaintiff was president of a corporation which owned two businesses: an electrical contracting business and a lounge. The record shows he supervised the day-to-day activities of both businesses. His duties to the employer Corporation did not end when traveling from the lounge to the office; he was traveling between jobsites.

■ Contradictory evidence was introduced as to whether he was on his way home to sleep, or on his way home to work in his office which was located there. The trial court believed that he was working while going from jobsite to jobsite. On review, we view the evidence and inferences that may be reasonably drawn therefrom, in the light most favorable to support the findings of the trial court. *Romero v. S.S. Kresge Co.,* 95 N.M. 484, 623 P.2d 998 (Ct.App.1981); *Schober v. Mountain Bell*

*Tel.*, 96 N.M. 376, 630 P.2d 1231 (Ct.App. 1980). The findings of the trial court are supported by the evidence.

Affirmed.

IT IS SO ORDERED.

WALTERS, C.J., and DONNELLY, J., concur.