# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2011-NMSC-032**

**Filing Date: July 19, 2011**

**Docket No. 32,311**

**PETE RODRIGUEZ, JOSE TURRUBIATES, BILL
and NORMA CORSAUT, as guardians of minor children,
DRAVEN C. and DEVAN W., natural children of
ELOY DOPORTO, JR., deceased, and MIKE LUCAS**,

       **Workers-Petitioners,**

**v.**

**PERMIAN DRILLING CORPORATION and
AMERICAN HOME ASSURANCE,**

       **Employer-Insurer-Respondents.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Helen L. Stirling, Workers' Compensation Judge**

Trenchard & Hoskins
Royce E. Hoskins
Josephine Lue
Roswell, NM
Trenchard & Hoskins
Paul G. Tellez
El Paso, TX

Chavez Law Office
Gonzalo Chavez
Roswell, NM

for Petitioners

Butt, Thornton & Baehr, P.C.
Carlos G. Martinez
Emily A. Franke
Albuquerque, NM

1

for Respondents

**OPINION**

**SERNA, Justice.**

**{1}** This Opinion addresses an exception in the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1987) (as amended through 2006) (the Act), that permits compensation for injuries incurred in travel by employees when those injuries "aris[e] out of and in the course of employment." Section 52-1-19. Eloy Doporto, Jr.,[1] Mike Lucas, Jose Turrubiates, and Pete Rodriguez (collectively, Workers), oilfield workers employed by Permian Drilling Corporation (Permian), insured by American Home Assurance, were involved in an automobile accident while traveling to their work site, resulting in the death of Doporto and injuries to the others. We conclude that the injuries suffered by Workers arose out of and in the course of their employment because the travel was mutually beneficial to employees and employer and Workers encountered special hazards unique to their employment while traveling, thus rendering Workers "traveling employees" whose injuries are compensable under the Act.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

**{2}** Our review of the whole record developed before the Workers' Compensation Judge (WCJ) supports the following statement of the factual background. Permian operates mobile drilling rigs throughout southeastern New Mexico and western Texas. The rigs are mobile and are moved to a new location after the drilling of a well is complete, generally every seven to eight days. The drill sites typically are located in rural areas, far from any town, making travel necessary. Crews travel to and from the drill site daily; if the site is extremely remote, however, the drilling company provides lodging. The rigs, operated twenty-four hours a day, are staffed by three crews working eight-hour shifts and a relief crew that replaces the others on their respective days off.

**{3}** Each crew consists of a driller and three to four crew members. The driller is responsible for hiring and supervising his crew, subject to Permian's approval. The driller is obligated to have a full crew present at the drilling site at the beginning of the shift; an insufficient number of crew members results in an idle rig and imposes a significant financial burden on the company. To meet this responsibility, the industry practice is for drillers to transport their crews to the rig site, though Permian has no written policy requiring such. Permian requires drillers to maintain a valid driver's license and automobile insurance, and compensates the drillers at the rate of twenty-five cents for each mile traveled to a rig site. Individual crew members are not compensated for their travel time, even if they choose to travel individually; they are paid hourly once they begin their scheduled shift. Permian's

---

[1]Petitioners concerned with Doporto's claim are Bill and Norma Corsaut as guardians of Doporto's minor children.

2

crews may travel up to 4000 miles per month, or as much as 200 miles per day, to reach the mobile drilling rigs to which they are assigned, though Permian does not dictate the route they must travel nor the mode of transportation.

{4}     Workers were members of an oil well drilling crew employed by Permian. Rodriguez, the driller, customarily picked up the members of his crew—Doporto, Lucas, and Turrubiates—at their homes in Hobbs to transport them to the rig site in his vehicle. Rodriguez led weekly safety meetings with his crew on topics that included travel safety. The crew had been working extra shifts in the days prior to the accident. In the early morning of November 10, 2006, Rodriguez picked up his crew at their homes, and they set forth from Hobbs to the rig site, a distance of approximately sixty to seventy miles. The crew stopped at a gas station to fill their water cooler. A short time later, the vehicle was involved in a single-car accident in which Doporto was killed and the others were injured.

{5}     Workers filed workers' compensation claims under the Act, arguing that they were traveling employees injured in the course of their employment. Their claims were consolidated before a WCJ. The WCJ bifurcated the trial to decide the issue of compensability before determining benefit entitlements. After a trial on the merits and the submission of proposed findings of fact by each party, the WCJ entered written findings of fact, conclusions of law, and a compensation order. The WCJ concluded that Workers were commuters, that the mileage payments to Rodriguez did not make him a traveling employee, and that the travel to the rig site was "not an incidental or integral part of Workers' employment." As a result, Workers' claims were dismissed because their injuries did not occur within the course and scope of their employment and thus the injuries were not compensable under the Act.

{6}     Workers appealed to the Court of Appeals, which, in a memorandum opinion, upheld the WCJ's dismissal of Workers' claims. *Rodriguez v. Permian Drilling Corp.*, No. 29,435, slip op. at 13 (N.M. Ct. App. Mar. 18, 2010). The Court of Appeals concluded that substantial evidence supported the WCJ's conclusion that Rodriguez was not fulfilling a duty of his employment in transporting his crew, *id.*, and that Workers were not traveling employees under the Act when the accident occurred, *id.* at 12-13.

## II.     STANDARD OF REVIEW

{7}     "All workers' compensation cases are reviewed under a whole record standard of review." *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. As a general matter, we defer to the expertise of the administrative judge and "[w]e will not . . . substitute our judgment for that of the agency; although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole." *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991).

{8}     If the facts are largely undisputed, as in this case, whether Workers' injuries are

3

compensable under the Act is a question of law. *See Edens v. N.M. Health and Soc. Servs. Dep't*, 89 N.M. 60, 62, 547 P.2d 65, 67 (1976); *Ramirez v. Dawson Prod. Partners, Inc.*, 2000-NMCA-011, ¶ 14, 128 N.M. 601, 995 P.2d 1043. "When an agency that is governed by a particular statute construes or applies that statute, the court will begin by according some deference to the agency's interpretation." *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995). The court, however, "is not bound by the agency's interpretation and may substitute its own independent judgment for that of the agency because it is the function of the courts to interpret the law." *Id.* Because our review of this case requires us to construe the Act, our primary goal is to give effect to legislative intent. *See El Paso Elec. Co. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-048, ¶ 7, 149 N.M. 174, 246 P.3d 443; *see also State v. Smith*, 2004-NMSC-032, ¶¶ 9-10, 136 N.M. 372, 98 P.3d 1022 (summarizing our canon of statutory construction).

## III. ANALYSIS

**{9}** New Mexico's workers' compensation scheme, codified in the Act, is designed "to compensate workers for injury arising out of and in the course of employment." *Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 9, 144 N.M. 782, 192 P.3d 777. Claims under the Act are to be resolved with due consideration for the rights of both employees and employers. NMSA 1978, § 52-5-1 (1990). The Act provides the exclusive remedy for an employee to receive compensation for an injury "arising out of and in the course of his employment." Section 52-1-9(B). This includes

> accidental injuries to workers and death resulting from accidental injury as a result of their employment and while at work in any place where their employer's business requires their presence but shall not include injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties.

Section 52-1-19. An injury arises out of and in the course of employment if the injury was sustained "during the commission of an activity that is reasonable and foreseeable both as to its nature and manner of commission." *Ramirez*, 2000-NMCA-011, ¶ 17; *see* § 52-1-28 (A)(1) & (2) (requiring proof that the injury was "arising out of and in the course of [the] employment" and "reasonably incident to [the] employment").

**{10}** The Act excludes injuries incurred by an employee "while on [the] way to assume the duties of . . . employment or after leaving such duties," *Ramirez*, 2000-NMCA-011, ¶ 7, commonly referred to as the "going and coming" rule. *See, e.g., id.*; *Garcia v. Phil Garcia's Elec. Contractor, Inc.*, 99 N.M. 374, 376, 658 P.2d 449, 451 (Ct. App. 1982). "This rule arises from the recognition that, while admittedly the employment is the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey." *Ramirez*, 2000-NMCA-011, ¶ 7 (internal quotation marks and citation omitted).

4

That is, injuries incurred during a commute are not covered under workers' compensation law.

**{11}** Recognized exceptions to the going and coming rule are numerous; we limit our discussion, however, to the single exception at issue in this appeal, that of the traveling employee. This exception was adopted, and thoroughly explained, by the Court of Appeals in *Ramirez*. *Id.* ¶ 11. *Ramirez* defined traveling employees as "employees for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace." *Id.* (internal quotation marks and citation omitted).

**{12}** Traveling employees are distinct from "mere commuters" whose injuries are excluded from compensation under the Act. *See Flores*, 2008-NMCA-123, ¶ 27. We imagine a commuter as one who chooses to live in Albuquerque or Tesuque but works in Santa Fe. The commuter has the option of living and working in the same city, but for any number of reasons chooses to travel some distance between home and work. In *Flores*, the Court of Appeals concluded that the oil rig workers injured while traveling to the rig site were commuters, not traveling employees. The Court of Appeals found that the injuries did not arise out of the employment because the rig was in a fixed location, relatively close to the workers' residences, and because the employer did not provide any reimbursement or per diem specifically for transportation costs nor require any of the workers to maintain valid licenses or insurance. *Id.* ¶¶ 22-24, 27. Traveling employees, in contrast, are those who encounter special hazards on the road that could be avoided were travel not a necessary component of the employment. Anyone for whom travel is an integral, avoidable part of the job is a traveling employee. *See Chavez v. ABF Freight Systems, Inc.*, 2001-NMCA-039, ¶ 15, 130 N.M. 524, 27 P.3d 1011 (noting that the truck driver "was on the road, serving his employer's interests, and it was the fact that he was on the road that exposed him to hazards he would not have faced at home").

**{13}** The primary reason for the distinction between a commuter and a traveling employee is that travel undertaken by a traveling employee provides substantial benefit to both employee and employer. "[T]he activity giving rise to the injury must confer some benefit on the employer." *Ramirez*, 2000-NMCA-011, ¶ 16; *see also* Kurtis A. Kemper, *Application of the "Mutual Benefit" Doctrine to Workers' Compensation Cases*, 11 A.L.R.6th 351 Table (2006) (compiling cases). "The benefit to the employer need not be pecuniary, and may be as intangible as a well-fed and well-rested employee." *Ramirez*, 2000-NMCA-011, ¶ 17.

> The rationale behind the traveling employee rule is that an employee who is required to travel away from home is furthering the business of his employer as he eats, sleeps, and performs other acts necessary to his health and comfort during his travels. In addition, where the employment requires travel, the employee is consequently exposed to hazards she would otherwise have the option of avoiding. Thus the hazards of the route become the hazards of employment. But, it is not merely travel on a highway that creates a risk of

compensable injury; if that were so, every ordinary commuter would be covered under the Act. Rather, it is the job's requirement of travel and the employer's authority and control in assigning its employees to different work sites that increase the normal risk and render compensable injuries suffered during such travel.

*Id.* ¶ 12 (internal quotation marks, citation, and alterations omitted).

**{14}** To determine whether an injury incurred while en route to the place of employment falls within the traveling employee exception to the going and coming rule, the Court of Appeals has utilized various factors. *Ramirez* set forth certain considerations relevant to determining whether an employee is a traveling employee for purposes of the Act. These considerations include "that an injury . . . takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Id.* ¶ 16 (internal quotation marks and citation omitted). In *Flores*, the Court of Appeals quoted as persuasive authority certain factors used by the Colorado Supreme Court to determine if an injury falls within the traveling employee exception:

> (1) whether the travel occurred during working hours, (2) whether the travel occurred on or off the employer's premises, (3) whether the travel was contemplated by the employment contract, and (4) whether the obligations or conditions of employment created a "zone of special danger" out of which the injury arose. Whether meeting one of the variables is sufficient, by itself, to create a special circumstance warranting recovery depends upon whether the evidence supporting that variable demonstrates a causal connection between the employment and the injury such that the travel to and from work arises out of and in the course of employment.

2008-NMCA-123, ¶ 14 (quoting *Staff Adm'rs, Inc. v. Reynolds*, 977 P.2d 866, 868 (Colo. 1999) (en banc)).[2] All of the considerations listed in *Ramirez* and *Flores* are sound guideposts for analyzing whether a worker was a traveling employee at the time of the injury, which, in turn will determine whether an injury arose out of and in the course of employment.

**{15}** A review of New Mexico caselaw reveals that our appellate courts have used two of the above-listed factors in particular to decide whether the traveling employee exception to

---

[2]The Colorado Supreme Court articulated these factors in *Madden v. Mountain West Fabricators*, noting that contractual travel requirements could be express or implied, but that a key factor is "when such travel confers a benefit on the employer beyond the sole fact of the employee's arrival at work." 977 P.2d 861, 864-65 (Colo. 1999) (en banc) (citing, *inter alia*, *Loffland Bros. v. Baca*, 651 P.2d 431, 432-33 (Colo. App.1982)).

the going and coming rule applies: the express or implied employment contract terms and the zone of special danger created by the required travel. In *Barrington v. Johnn Drilling Co.*, we stated that the going and coming rule did not apply "where hazards of the journey may fairly be regarded as hazards of the service to be performed and are dependent on the nature and the circumstances of the particular employment; also where the employer contracts to and does furnish transportation to and from work." 51 N.M. 172, 177, 181 P.2d 166, 169-70 (1947). The decedent in *Barrington* was a driller who transported his crew sixty-five miles round-trip daily between Hobbs and the oil rig, where no lodging was available, and was compensated at the rate of seven cents per mile; he died in a car accident between Hobbs and the rig site. 51 N.M. at 174-75, 181 P.2d at 167-68. The Court determined that the decedent was killed in the course of his employment because the employer had agreed to provide transportation by an "express agreement or . . . course of dealing," and paid for the cost of transportation. *Id.* at 177-78, 181 P.2d at 169-70 (emphasis omitted) (quoting *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 480 (1947)). The decedent's travel to the rig site "was not a case of employees traveling in the same city between home and work. Extended cross-country transportation was necessary. And it was transportation of a type that an employer might fairly be expected to furnish." *Id.* at 179, 181 P.2d at 171 (quoting *Cardillo*, 330 U.S. at 484); *see also Wilson v. Rowan Drilling Co.*, 55 N.M. 81, 87, 227 P.2d 365, 368-69 (1950) (concluding that an injury incurred by a driller while transporting his crew arose out of and in the course of employment because the driller was contractually required to ensure he had a fully staffed crew when his shift commenced and throughout the shift).

**{16}** *Ramirez'* analysis focused on the terms of the employment contract, although its definition of a traveling employee indicated the special hazards faced by oil rig workers were given due consideration. The three plaintiffs in *Ramirez* were oil field workers assigned to a job site in western Texas, approximately 90 miles from Hobbs. 2000-NMCA-011, ¶ 2. As a condition of their employment, they were provided with per diem for lodging near the job site and travel between the hotel and the site, and initially were provided with transportation between the site and Hobbs on their days off. *Id.* ¶ 3. Later, however, the employer provided an extra crew member in exchange for the employees providing their own transportation between the work site and Hobbs. *Id.* ¶ 4. The three plaintiffs were injured while traveling to Hobbs from the work site. *Id.* ¶ 5. *Ramirez* concluded that two workers were covered: the worker who took the trip to transport a colleague who was scheduled to begin his time off and to transport dirty uniforms for laundering at the request of the site supervisor, *id.* ¶ 18, and the worker who was scheduled to take time off and arranged to travel in his colleague's vehicle, *id.* ¶ 19. The third worker, however, took the trip to keep his colleague company and thus "conferred no benefit" upon the employer and did not qualify for benefits. *Id.* ¶ 20; *see also Martinez v. Fidel*, 61 N.M. 6, 9, 293 P.2d 654, 656 (1956) (concluding that slipping on ice while taking one of many possible routes between the office and the employer's parking lot was not an accident incurred in travel "peculiar to [plaintiff's] work"); *Brown v. Arapahoe Drilling Co.*, 70 N.M. 99, 101, 370 P.2d 816, 818 (1962) (finding that the fact that a driller participated in a car pool with his crew, occasionally using company gas, was not enough to bring the deceased driller within the

7

traveling employee exception); *Arias v. AAA Landscaping*, 115 N.M. 239, 240, 849 P.2d 382, 383 (Ct. App. 1993) (holding that the worker was not entitled to workers' compensation because, although the employer typically provided transportation for the employees and paid them during the travel time, on the date of the injury the worker had received permission to leave early, was not paid for the rest of the day, and traveled in a private vehicle).

{17}    Other jurisdictions likewise review the circumstances of employment when determining whether an injury incurred en route to an oil rig falls within the traveling employee exception to the going and coming rule. *See Loffland Bros.*, 651 P.2d at 433 ("[W]here the employer required the employees to travel a considerable distance to their job, where there was a benefit to the employer in having a full crew on hand, and where they had made arrangements to pay the driller to collect the crew and bring them to the drill site so as to make it more probable that a full crew would be on hand, the accident did occur within the course of and arise out of the employment of these claimants."); *Messenger v. Sage Drilling Co.*, 680 P.2d 556, 560 (Kan. Ct. App. 1984) (holding that the trial court did not err in concluding that the employee's travel was of substantial benefit to the employer, and thus covered by workers' compensation, when the oil rig workers had no set place of employment, were required to travel long distances daily, and were compensated for their mileage); *Lassabe v. Simmons Drilling, Inc.*, 743 P.2d 568, 570-71 (Mont. 1987) (concluding that the employer's policy required the driller to transport his crew to the rig at the start of a shift, rendering the accident compensable by the workers' compensation scheme); *Christian v. Nicor Drilling Co.*, 653 P.2d 185, 186, 188 (Okla. 1982) (noting that, "[w]hen drilling sites are at locations remote from population centers, transportation is commonly provided by the employer for the mutual benefit of all parties," and concluding that workers traveling in their private vehicle because they missed the employer-provided transportation were covered by the traveling employee exception); *Texas Emp'rs Ins. Ass'n v. Byrd*, 540 S.W.2d 460, 462 (Tex. Civ. App. 1976) ("[H]olding . . . that the requirement of the employees being in the course and scope of their employment in the furtherance of the employer's affairs is satisfied by the undisputed facts as to the plan of getting them to and from the job location in a remote area and the benefits which such plan conferred upon the employer.").

{18}    Some courts have focused their analysis specifically on the special hazards encountered by oil rig workers. The Ohio Supreme Court, in *Ruckman v. Cubby Drilling, Inc.*, applied a special hazard test to a workers' compensation claim by oil rig workers who worked at a fixed site[3] and concluded that their injuries incurred when traveling to the rig site were covered. 689 N.E.2d 917, 924 (Ohio 1998). *Ruckman* stated that travel to a rig site

_____

[3]*Ruckman*'s definition of "fixed situs" distinguishes it from a situation in which travel *is* the job, *e.g.*, traveling salesman, stating that a fixed-site employee "may be reassigned to a different work place monthly, weekly, or even daily." 689 N.E.2d at 920-21. This definition is consistent with that utilized by *Flores*, 2008-NMCA-123, ¶ 27 ("The rig itself was a fixed work site.").

8

is a special hazard of oil rig workers' employment because: (1) the rig sites are temporary in nature and constantly changing; (2) workers are unable to "fix their commute in relation to these remote work sites"; and (3) workers are required to travel vast distances as conditions of their employment. *Id.* The court held that "because of the combination of all these factors, the riggers have established a risk quantitatively greater than risks common to the public," and accordingly were entitled to recovery under the workers' compensation scheme. *Id.*; *see also Falls v. Union Drilling Inc.*, 672 S.E.2d 204, 212-13 (W.Va. 2008) (concluding that a "special hazard or increased risk" existed in the scope of the employment when an oil rig worker worked an extra shift and then fell asleep during his lengthy trip home, thus precluding a negligence cause of action against the employer).

{19}    While we believe all of the above-stated factors are important considerations to be undertaken by the WCJ and reviewing courts, we find the "zone of special danger" or "special hazard" factor to be most significant to resolving this case.[4] *See Barrington*, 51 N.M. at 177, 181 P.2d at 169-70. As discussed above, the traveling employee exception to the going and coming rule permits recovery under the Act for employees injured while traveling when that travel is an integral part of the employment. For an employee to be a traveling employee due to a special hazard of employment, two factors are required: (1) "but for the employment, the employee would not have been at the location where the injury occurred"; and (2) "the risk is distinctive in nature or quantitatively greater than risks common to the public." 82 Am. Jur. 2d *Workers' Compensation* § 284 (2003). This analysis, along with the requirement that the travel provide some benefit to the employer, helps determine whether travel is an integral part of employment, which, in turn, ensures that only those individuals whose injuries arose out of and in the course of employment receive compensation, maintaining the balanced approach to the Act intended by the Legislature. *See* §§ 52-1-19 and 52-5-1. It ensures that not every employee who is injured on the road receives benefits under the Act but that those who must be on the road as an "integral part of their jobs" are covered.

{20}    We now return to the record in this appeal and conclude that the facts of this case indicate Workers fall squarely within the traveling employees exception because their travel provided a mutual benefit to the employer and employee and the conditions of employment placed the employees in a zone of special danger out of which the injury arose. The rig site to which Workers were traveling when the accident occurred was some sixty or seventy miles away from Workers' residences in Hobbs, and lodging was not available at the rig site. Workers did not have a stationary work site but were required to move to another site every seven to eight days, preventing them from fixing their commute in relation to the rig site. Permian benefitted from having a mobile work crew that resided in a central location and

---

[4]Although certain states appear to apply the special hazard or special danger as a separate exception to the going and coming rule, *see, e.g.*, *Parks v. Workers' Comp. Appeals Bd.*, 660 P.2d 382, 384-85 (Cal. 1983), we approve of the doctrine only as a tool to interpret the traveling employee exception.

could travel to different sites weekly without having to change residences. Permian incurred a substantial benefit by having its employees provide their own transportation, while subsidizing only the driller's transportation, rather than providing daily transportation for all employees. Rodriguez, the driller, was compensated for his mileage and was expected to arrive at the drilling site with a full crew and for having a valid license and proof of insurance on file with Permian. His crew was not compensated for their travel, but this is not required if the circumstances indicate the travel was for the purpose of fulfilling their duties of employment and benefit of the travel was incurred by the employer.[5] We conclude that these special characteristics attendant to employment in the oil rig field satisfy the requirement that travel be mutually beneficial to employer and employee.

{21}    The conditions of employment placed Workers in a zone of special danger from which arose their injuries. The long hours, long and varied travel time, and lack of choice in decreasing the commute gave rise to risks distinct from those of an average traveler on a public highway. Extensive travel is an integral part of the work of oil rig drillers and crew members, particularly for mobile rigs such as the ones on which Workers were employed, and as such distinguishes the travel to the rigs from a commute. The special hazards faced by Workers in their travel to and from the rig site were a requirement of their employment, and the accident giving rise to their claims would not have occurred but for the required travel. We conclude that the WCJ erred in its application of the traveling employee exception of the going and coming rule to Workers, and that substantial evidence in the whole record supports the conclusion that Workers were injured in the course of their employment.[6]

## IV.    CONCLUSION

{22}    For the foregoing reasons, we conclude that the Court of Appeals and WCJ erred in their conclusion that Workers' injuries are non-compensable under the Act. We reverse the Court of Appeals' memorandum opinion and remand to the WCJ for further proceedings consistent with this Opinion.

---

[5]Permian argues that the stop at a local gas station en route to the rig site to purchase food and water when Workers were not directed to do so by their employer mandates affirmance of the WCJ's order denying compensation. Even if the stop at the gas station were an unauthorized deviation, a point on which we pass no opinion, *see, e.g.*, *Parr v. N. M. State Highway Dep't*, 54 N.M. 126, 131, 215 P.2d 602, 605-06 (1950), Workers were injured on the road, not at the gas station, so the stop does not affect our analysis.

[6]Because we conclude the injuries to Workers arose out of and in the course of their employment under the traveling employee exception, we do not address Rodriguez' separate claim that the mileage payment meant that he was fulfilling a duty of his employment at the time he was injured. We note simply that the mileage payment adds further support to the conclusion that Rodriguez' injury arose out of and in the course of his employment.

**{23}    IT IS SO ORDERED.**

_____
**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _Rodriguez v. Permian Drilling Corp._, Docket No. 32,311**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW & PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-JR | Judicial Review |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-OG | Oil and Gas |
| | |
| **WC** | **WORKERS COMPENSATION** |
| WC-BC | Basis for Compensation |
| WC-CC | Causal Connection |
| WC-CR | Coming and Going Rule |
| WC-CE | Course of Employment |
| SC-SE | Scope of Employment |