This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41253

**STATE OF NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT,**

Appellant-Respondent,

v.

**JEREMY LYNN and CHRISTINA MONTGOMERY,**

Appellees-Petitioners.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Erin B. O'Connell, District Court Judge**

Children, Youth & Families Department
Julie Sakura, Chief General Counsel
Justin L. Boyd, General Counsel
Kathryn Grusauskas, Assistant General Counsel
Santa Fe, NM

for Respondent

Youtz & Valdez, P.C.
Shane Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Petitioners

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Petitioners Jeremy Lynn and Christina Montgomery appeal the judgment of the district court reversing an arbitration award against Respondent, New Mexico Children, Youth and Families Department (CYFD). On appeal, Petitioners argue that the district court erred in reversing the arbitration award because the district court substituted its own factual findings for those of the arbitrator and substantial evidence supports the arbitration award. We reverse the district court's order and affirm the arbitration award.

**BACKGROUND**

**{2}**     Petitioners were employed as investigators in CYFD's Child Protective Services Division[1] (CPS)—Ms. Montgomery as an Investigation Senior Caseworker and Mr. Lynn as an Investigation Caseworker. Petitioners were discharged from their employment following CYFD's determination that they committed misconduct in connection with Petitioners' investigation into six reports of suspected child abuse and neglect regarding the same family. Each of the six reports was assigned to Ms. Montgomery to investigate. One of the reports, the November 14, 2017 report, was assigned to Mr. Lynn as a secondary investigator. We address the specific facts relating to each alleged misconduct as they become relevant to our analysis.

**{3}**     Initially, CYFD placed both Petitioners on administrative leave pending investigation. In both instances CYFD issued a fact-finding summary, a notice of contemplated action, and a notice of final action terminating Petitioners' employment with CYFD.

**{4}**     CYFD found that four counts of misconduct were substantiated against Ms. Montgomery: (1) entering false information regarding an investigation of a November 14, 2017 report, into CYFD's Family Automated Client Tracking System (FACTS) to reflect face-to-face contact with the family had been made; (2) failing to conduct a case history review in connection with a June 24, 2017 report, or if such a review was conducted, failing to document the review in FACTS; (3) failing to close cases within forty-five days—specifically, the notice of final action lists three reports that had been open for 180, 135, and 85 days respectively; and lastly (4) failing to document diligent efforts past the initiation point when investigating a September 22, 2017 report, and failing to enter a narrative for a November 1, 2017 report, into FACTS.

**{5}**     Similarly, CYFD also substantiated the misconduct allegation against Mr. Lynn. CYFD found Mr. Lynn violated both the CYFD Code of Conduct and the Governor's Code of Conduct when he responded to an emergency CPS Intake Report—"which was a call from [a] teacher . . . regarding allegations of lack of supervision, inadequate clothing and sexual molestation"—and made comments to a police officer at the scene "that the teacher 'is a real pain in the ass'" and that "we have been out to this school, like, numerous times." Mr. Lynn's remarks came to light after the police officer's lapel video was obtained by media outlets.

---

[1]"The protective services division is New Mexico's officially designated child welfare agency, responsible for providing child protective services to individuals and families." 8.8.2.8 NMAC.

**{6}** Petitioners each filed an appeal of their individual disciplinary matters with the State Personnel Board (Personnel Board) in accordance with NMSA 1978, Section 10-9-18 (2009) of the Personnel Act, *see* NMSA 1978, §§ 10-9-1 to -25 (1961, as amended through 2014), and the Collective Bargaining Agreement (the CBA) between the State of New Mexico and American Federation of State, County and Municipal Employees, Council 18 (AFSCME). Petitioners selected arbitration as their method of appeal.

**{7}** Following an evidentiary hearing spanning nine days over a two-year period, the arbitrator ordered reinstatement and back pay for both Petitioners. CYFD appealed the arbitration award to the district court pursuant to Rule 1-074 NMRA. The district court reversed the arbitration award. Petitioners then filed a petition for writ of certiorari to this Court, seeking review and reversal of the district court's order reversing the arbitration award. We granted the petition.

## DISCUSSION

**{8}** Petitioners assert that substantial evidence supports both the arbitrator's determination that Mr. Lynn's actions, while constituting misconduct, did not warrant termination, and that Ms. Montgomery did not engage in any misconduct warranting discipline. After a brief summary of the relevant law, we address each of the arbitrator's determinations in turn.

### I. Standard of Review

**{9}** A district court may "set aside, reverse, or remand" the final decision of the arbitrator when: "(1) the [arbitrator] acted fraudulently, arbitrarily[,] or capriciously; (2) the final decision was not supported by substantial evidence; or (3) the [arbitrator] did not act in accordance with [the] law." NMSA 1978, § 39-3-1.1(D) (1999). This Court, reviewing the entire record, applies the same standard of review as the district court. *See Martinez v. N.M. State Eng'r Office*, 2000-NMCA-074, ¶ 31, 129 N.M. 413, 9 P.3d 657. "The burden is on the party challenging the [arbitrator's] decision to demonstrate grounds for reversal." *Selmeczki v. N.M. Dep't of Corr.*, 2006-NMCA-024, ¶ 13, 139 N.M. 122, 129 P.3d 158.

### II. Overview of the Relevant Law

**{10}** The Personnel Act states that "[a]n employee who is dismissed, demoted or suspended may, within thirty days after the dismissal, demotion or suspension, appeal" to the Personnel Board. Section 10-9-18(A). Where, as here, "the public employer has entered into a collective bargaining agreement, pursuant to the Public Employee Bargaining Act [the PEBA], NMSA 1978, §§ 10-7E-1 to -25 (2003, as amended through 2020), covering the employee, such an employee who is dismissed, demoted or suspended may . . . irrevocably elect to appeal the action through arbitration." Section 10-9-18(H).

**{11}** The underlying arbitration was conducted, pursuant to the CBA, between AFSCME, Council 18 and the State of New Mexico. The CBA was negotiated pursuant to the PEBA and it "is applicable to all eligible employees in the collective bargaining unit of the [e]mployer"—which in this case is CYFD. "The purpose of this agreement is to provide reasonable terms and conditions of employment for employees covered hereunder and a means of amicable and equitable adjustment of any and all differences or grievances which may arise under the provisions of [the CBA]."

**{12}** Pursuant to both the Personnel Act and the CBA, before dismissal, demotion or suspension of an employee, "just cause" must exist. *See Selmeczki*, 2006-NMCA-024, ¶ 15 ("Employees subject to the Personnel Act who have completed a probationary period may only be disciplined for just cause."); *see also* § 10-9-18(F) (providing for reinstatement if dismissal was not for just cause). The CBA describes "just cause [as] any behavior relating to the employee's work that is inconsistent with the employee's obligation to the agency." *See also* 1.7.11.10(A) NMAC (similarly stating that "just cause" is "any behavior relating to the employee's work that is inconsistent with the employee's obligation to the agency"). An employee who believes themselves not to have been dismissed for just cause has the right to appeal to the Personnel Board, pursuant to the Personnel Act, *see* § 10-9-18(A), and "[i]f the [Personnel B]oard finds that the action taken by the agency was without just cause, the [Personnel B]oard may modify the disciplinary action or order the agency to reinstate the appealing employee . . . [and] may award back pay as of the date of the dismissal, demotion or suspension." Section 10-9-18(F).

**{13}** In this case, where "the public employer has entered into a [CBA] pursuant to [the PEBA] covering the employee, such an employee who is dismissed, . . . , may, within thirty days after the dismissal, . . . , irrevocably elect to appeal the action through arbitration" in accordance with the procedures and requirements set forth in the Personnel Act. Section 10-9-18(H) (citation omitted). Arbitrators are equipped with the same powers as the Personnel Board to modify the disciplinary action, reinstate employment, and award back pay. *See* § 10-9-18(F). Further, "[a] party aggrieved by the decision of the [arbitrator] . . . may appeal the decision to the district court pursuant to the provisions of Section 39-3-1.1." Section 10-9-18(G), (H).

## III. Arbitration Award

**{14}** As an initial matter, we note Petitioners argue that the district court failed to follow the appropriate standard of review. However, neither party asserts that the standard of review is other than the one found in Section 39-3-1.1(D) (stating the standard of review for district court review of an agency's decision). Moreover, the district court stated in its opinion and order that the appropriate standard of review is the standard set forth in Section 39-3-1.1(D). As such, we understand Petitioners to argue that the district court erred in applying the standard of review rather than the district court relying on the wrong standard of review in the first place. With this in mind, we turn our review to each of the arbitrator's determinations, bearing in mind that arbitration is a "highly favored form of dispute resolution," *see Luginbuhl v. City of Gallup*, 2013-NMCA-

053, ¶ 21, 302 P.3d 751 (internal quotation marks and citation omitted), because it promotes judicial efficiency and conservation of the parties' resources. *See Santa Fe Techns., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 51, 131 NM. 772, 42 P.3d 1221. "New Mexico has a strong public policy in favor of arbitration as a form of dispute resolution." *Luginbuhl*, 2013-NMCA-053, ¶ 21 (internal quotation marks and citation omitted).

## A.    Mr. Lynn

**{15}**    We begin by addressing the alleged misconduct violation against Mr. Lynn. The arbitrator determined that he "did not bring credit to the State . . . by making the statement about the teacher[ and that] he clearly engaged in misconduct by making the statement." However, the arbitrator concluded that dismissal was "excessive given the circumstances" because Mr. Lynn "did not and could not have anticipated that [the recording of him speaking about the teacher] would be played on media outlets." Accordingly, the arbitrator changed removal to a sixty-day suspension, reinstating Mr. Lynn's employment and also awarding back pay. On appeal to the district court, the district court concluded that the arbitrator's reduction in discipline was "arbitrary and capricious because it fails to consider" the reason Mr. Lynn's remarks constituted misconduct in the first place.

**{16}**    We cannot say that the arbitrator's determination regarding Mr. Lynn was arbitrary and capricious based on our review. A decision "is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806. In determining whether an arbitrator's decision is arbitrary and capricious "we must avoid substituting our own judgment for that of the [arbitrator]." *Selmeczki*, 2006-NMCA-024, ¶ 13.

**{17}**    Neither party disputes that the statements made by Mr. Lynn to the police officer constitute misconduct. CYFD asserts that the district court was correct in concluding that the arbitrator's reduction in discipline was arbitrary and capricious because it argues, as the district court concluded, the statements demonstrated "a lack of regard for a community partner whom the people of the State . . .  rely upon to report child abuse." However, the arbitrator acknowledged both the gravity of Mr. Lynn's statements and that CYFD had just cause to discipline Mr. Lynn for them. The question left, then, is whether the arbitrator's reduction in discipline was arbitrary and capricious.

**{18}**    Arbitrators, when reviewing a disciplinary action, are entrusted with the same powers as the personnel board. This includes the power to modify a disciplinary action if it is determined that just cause does not exist for the particular disciplinary action. *See* § 10-9-18(F) (stating "[i]f the [arbitrator] finds that the action taken by the agency was without just cause, the board may modify the disciplinary action or . . . reinstate the appealing employee . . . [t]he [arbitrator] may award back pay as of the date of the dismissal"). Here, the arbitrator's reduction in discipline was based on his conclusion that Mr. Lynn did not intend for his statements to be publicized. Moreover, it is clear

from our review of the record that Mr. Lynn had no prior disciplinary history during his employment with CYFD. Based on such facts, we cannot say that the arbitrator's decision was "unreasonable or without a rational basis," and the district court's decision to the contrary merely amounts to it substituting its own judgment for that of the arbitrator, which we have stated is impermissible in this circumstance. *See Selmeczki*, 2006-NMCA-024, ¶ 13.

## B.    Ms. Montgomery

{19}    As mentioned above, CYFD terminated Ms. Montgomery based on four alleged misconduct violations. We address the arbitrator's determinations regarding each alleged instance of misconduct.

### 1.    Falsification

{20}    Ms. Montgomery was assigned as the primary investigative caseworker for a CPS Intake Report, "which was an emergency report received by Statewide Central Intake (SCI) on November 14, 2017." Mr. Lynn was assigned to the case as a secondary investigative caseworker. On November 20, 2017, Mr. Lynn submitted investigative notes to Ms. Montgomery via email for final entry into the FACTS database. Mr. Lynn's notes submitted to Ms. Montgomery stated the following:

> 11/14/2017. 4:44 p[.]m. Home visit. CW Kandice Kaiser initiated emergency. Client no longer at school. Family not at the [redacted] Room [redacted]. No phone number. CW called room number, [redacted]. No Answer.

After receiving the email, Ms. Montgomery entered the following information into FACTS,

> Face-to-face contact with [redacted] on 11/14/2017, Room [redacted] at the [redacted] at 4:44 p.m.

She further entered,

> Face-to-face contact on November 14, 2017 at 4:44 p.m. at Room [redacted]. Says they changed rooms in the morning. At 9:00 a.m. they called for a different room number. Said they talked to mom, her clothes were dirty and her hair was dirty and not combed. She asked mom to stay but mom said she had a job interview. Said the room smells. They're working with Heading Home. Met with [redacted] and [redacted] at the same time. Got a new 1-week voucher from Heading Home. Has as appointment today with Chandler from Heading Home.

{21}    Based on the discrepancies between the information conveyed in Mr. Lynn's email and the information entered into FACTS by Ms. Montgomery, CYFD found that

Ms. Montgomery "altered the information provided to [her] . . . to show that face[-]to[-]face contact had been made, when the information provided to [her] reflects that kind of contact had not been made." CYFD further found that the alteration "falsifie[d] what was actually reported regarding the events that happened on November 14, 2017 at 4:44 [p.m.]."

**{22}** The arbitrator determined that "[t]he evidence in the record does not support a finding of falsification." In making this determination, the arbitrator relied on both Petitioners' testimony "that [Mr.] Lynn provided additional information [to Ms. Montgomery] but that [Ms.] Montgomery reflected that information [in FACTS] with the wrong date" and that "the date of the additional information was a typo." Finally, the arbitrator stated that "there are numerous state documents in evidence that have apparent typos. Typos happen." Thereafter, the district court concluded that "[t]he arbitrator's finding that [Ms.] Montgomery's false entry was a typographical error is not supported by substantial evidence."

**{23}** "For questions of fact, [we] look[] to the whole record to determine whether substantial evidence supports the [arbitrator]'s decision." *Pub. Serv. Co. of N.M. v. N.M. Pub. Regul. Comm'n*, 2019-NMSC-012, ¶ 14, 444 P.3d 460 (alteration, internal quotation marks, and citation omitted). "Substantial evidence requires that there is evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the [arbitrator]." *Id.* (internal quotation marks and citation omitted). "[W]e will not substitute our judgment for that of the [arbitrator]: although the evidence may support inconsistent findings, we will not disturb the [arbitrator]'s finding if supported by substantial evidence on the record as a whole." *Rodriguez v. Permian Drilling Corp.*, 2011-NMSC-032, ¶ 7, 150 N.M. 164, 258 P.3d 443 (omission, internal quotation marks, and citation omitted). "Under whole record review, evidence is viewed in a light most favorable to upholding the [arbitrator's] determination, but favorable evidence is not viewed in a vacuum that disregards contravening evidence." *Bass Enters. Prod. Co. v. Mosaic Potash Carlsbad Inc.*, 2010-NMCA-065, ¶ 28, 148 N.M. 516, 238 P.3d 885.

**{24}** Mr. Lynn testified that he emailed his notes to Ms. Montgomery and that he and Ms. Montgomery "had follow-up conversations in her office" regarding the notes. Similarly, Ms. Montgomery testified that the additional information that she entered into FACTS "was not conveyed in the notes" emailed by Mr. Lynn, but that she and Mr. Lynn "had a conversation in [her] office about those notes." Ms. Montgomery admitted in her testimony that she entered the wrong date regarding the day that face-to-face contact was made and that such contact did not occur on November 14, 2017. Although we acknowledge CYFD's contention that "[t]he collective differences from Mr. Lynn's email conveying the information, including different wording, different sentence structure, and different misspellings, demonstrate that Ms. Montgomery . . . falsified what actions were taken," this argument overlooks Petitioners' testimony explaining the discrepancies between the email and Ms. Montgomery's entry into FACTS. It is well settled that "the testimony of a single witness, if found credible by the fact-finder, is sufficient to constitute substantial evidence." *Process Equip. & Serv. Co. v. N.M. Tax'n Revenue*

*Dep't*, 2023-NMCA-060, ¶ 31, 534 P.3d 1043; *see also Perkins v. Dep't of Hum. Servs.*, 1987-NMCA-148, ¶ 20, 106 N.M. 651, 748 P.2d 24 ("Where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even though another conclusion might have been reached.").

**{25}** Viewing the evidence in a light most favorable to upholding the arbitrator's determination, we conclude that the arbitrator's determination regarding the falsification allegation is supported by substantial evidence. *See Bass Enters. Prod. Co.*, 2010-NMCA-065, ¶ 28. Because the district court concluded otherwise, it erred. *See N.M. Bd. of Psych. Exam'rs v. Land*, 2003-NMCA-034, ¶ 5, 133 N.M. 362, 62 P.3d 1244 (stating that the district court, in its appellate capacity, "is limited in the same manner as any other appellate body . . . and must defer to the [arbitrator's] factual determinations if supported by substantial evidence").

## 2. The June 24, 2017 Report

**{26}** Next, regarding the second allegation of misconduct, Ms. Montgomery was "assigned CPS Intake Report . . . which was an emergency report dated June 24, 2017." CYFD found that Ms. Montgomery failed to conduct a case history review in connection with the report, or if such a review was conducted, that she failed to document the review in FACTS. In the notice of final action, CYFD acknowledged that Ms. Montgomery stated that "the case history review for this report was reviewed by [her] supervisor Raette Chavez," but that she "did not indicate that the information Ms. Chavez reviewed was relayed or shared with [her], nor was it documented that the information in FACTS was reviewed or utilized in any way prior to the initiation or during the investigation of this case."

**{27}** Because the arbitrator's opinion did not specifically address this alleged instance of misconduct, the district court concluded that "[t]he [arbitrator's] failure to consider what the record discloses as an independent basis for discipline is arbitrary and capricious," and reversed Ms. Montgomery's grievance as to the second misconduct. We disagree and conclude that the arbitrator's omission is neither arbitrary nor capricious.

**{28}** The arbitrator made the final determination that Ms. Montgomery did not engage in any misconduct warranting discipline. During the arbitration proceedings, there was evidence presented concerning this alleged misconduct—as CYFD points to in its briefing and the district court references it in its final memorandum opinion and order. As the district court stated, "[Ms.] Montgomery testified that she had face-to-to face contact with all the children in the case." During an investigative interview regarding this report, Ms. Montgomery testified that after she received the emergency report, she located the family and met with the people named in the report. Although Ms. Montgomery did not create a FACTS entry until December 21, 2017, six months after the report was received, she testified that that "the notes were entered later due to caseload, due to this was the time that [she] was closing this case." She further stated that although the notes were not entered into FACTS prior to December 21, 2017, "[t]he

notes had always been in the file or in [her] notebook." However, the notes were "probably shredded" after she entered them into FACTS. When asked if she reviewed the case history for the report, she testified that her supervisor reviewed it because she did not have access to that field. Ms. Montgomery also testified that she conducted the investigation on this case with assistance of the on-call supervisor.

**{29}**     Based on review of the record, we conclude that the arbitrator's omission of this alleged misconduct in the opinion was neither arbitrary nor capricious, because there was substantial evidence to support the determination that Ms. Montgomery did not engage in the alleged misconduct. *See Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320 (stating that "[w]here the testimony is conflicting, the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact" (internal quotation marks and citation omitted)).

### 3.     Untimeliness

**{30}**     The next allegation of misconduct was that Ms. Montgomery failed to close three cases assigned to her, again all involving the same family, within forty-five days as is required by the CPS Investigation Procedure. Pursuant to this procedure, an investigation decision must be made by the deadline "unless an extension is secured from the supervisor." The notice of final action stated that Ms. Montgomery "never documented a request for an extension on these cases" but that according to Ms. Montgomery's interview, she was "under the assumption that investigators in Bernalillo County had been given a 'blanket extension' on all cases since Bernalillo County had such a high case volume." The notice further stated that Ms. Montgomery "could not provide documentation showing that Bernalillo County had been given a 'blanket extension' on all cases."

**{31}**     Based on the evidence presented during the arbitration proceedings, the arbitrator determined that because "the work unit in which [Ms.] Montgomery worked was severely understaffed . . . the charge of untimely closing the investigation[s] . . . is not sustained." The arbitrator cited to evidence presented indicating that CYFD "[i]nvestigators investigated cases four days a week during a workweek and closed cases one day a week[, but b]ecause of severe understaffing, the investigators had to investigate assigned cases on scheduled days to close cases." Additionally, the arbitrator noted that "[t]he understaffing problem remained unsolved over an extended period" and that "[m]any of the investigators had untimely cases." On appeal, the district court concluded that the arbitrator's finding that Ms. Montgomery's failure to close cases within forty-five days was the result of severe understaffing "is not supported by substantial evidence and . . . also is arbitrary and capricious." In reaching this conclusion, the district court stated that the arbitrator's finding "rests almost entirely on assertions of counsel." We disagree.

**{32}**     The district court relied on evidence presented by CYFD showing that the unit where Ms. Montgomery worked "was almost fully-staffed during the relevant period";

however, there was also significant evidence in the record that supported the arbitrator's determination that Bernalillo County had a long-standing history with untimely cases and understaffing. For instance, Sarah Blackwell, CYFD's Field Deputy Director, stated that there was a "pattern that [Bernalillo County's] cases weren't getting closed before the [forty-five] days." Ms. Blackwell also stated that "[i]t was innately understood that [CYFD in] Albuquerque was violating policy and procedure[, t]he Governor knew that, the Secretary knew that, . . . it was understood that they had a pending investigation problem." Ms. Blackwell further clarified that the problem with closing cases timely was a countywide problem. Elisabeth du Passage, who previously worked for CYFD as an investigator, senior investigator, and supervisor with CYFD, testified that case closures had been an issue in Bernalillo County as far back as 1996. Ms. Du Passage also testified that as a result of the backlog in Bernalillo County, CYFD would have supervisors come and help close cases and would grant amnesty for past-due case closures. Finally, Paula Fisher, a CYFD employee and President of the Local AFSCME Union, testified that there was a long-standing issue with high turnover rates amongst CYFD staff as a result of high caseloads.

**{33}** Moreover, there was also evidence presented via CYFD's own exhibits supporting the testimony that Bernalillo County had a countywide backlog issue. For example, in March 29, 2018, Bernalillo County East had 662 investigations and 247 of those cases were pending over forty-five days; and Bernalillo County West had 1223 investigations, 776 of which were pending over forty-five days. An email from Acting County Office Manager, Lisa Moore, to Bernalillo County staff dated September 4, 2018, indicated that there was a total of 1388 overdue cases—152 of those pending from 2017.

**{34}** Based on our review of the record, we cannot say that the arbitrator's determination that Ms. Montgomery did not engage in misconduct because of her failure to timely close cases was not supported by substantial evidence or is otherwise either arbitrary or capricious. *See Tom Growney Equip. Co.* 2005-NMSC-015, ¶ 13. The district court erred in concluding otherwise.

### 4.    Diligent Efforts

**{35}** The final allegation against Ms. Montgomery was that she failed to complete required documentation for two reports of child abuse: a September 22, 2017 report, and a November 1, 2017 report. Regarding the September 22, 2017 report, CYFD found that Ms. Montgomery failed to document her diligent efforts to locate the family in FACTS. Pursuant to CYFD investigation procedures, "a case may be initiated through diligent efforts to locate if it appears that the alleged child victim will not be located prior to the expiration of the initiation time frame[, d]iligent efforts have to be approved by a supervisor . . . then the efforts and approval are documented by the worker and supervisor in FACTS." CYFD acknowledged that Ms. Montgomery stated that she had received approval by her supervisor, but the information was not documented in FACTS. Next, regarding the November 1, 2017 report, CYFD found that Ms. Montgomery failed to enter a narrative into FACTS and that she only cited to a possible

"shutdown/crash of FACTS" that could have occurred during her entry as justification for not doing so.

**{36}**     Regarding the September 22, 2017 report, the arbitrator determined that Ms. Montgomery did not commit misconduct because of an "undisputed crash of FACTS." There is substantial evidence to support this determination. The evidence shows that Ms. Montgomery sought approval for her diligent efforts via an email from her supervisor who then approved her diligent efforts—however, those diligent efforts did not appear in FACTS. The arbitrator determined that a crash of FACTS explained the absence of the diligent efforts entry—there was testimony in the record, presented by a data evaluation unit manager for CYFD, that FACTS crashes regularly.

**{37}**     Next, regarding the November 1, 2017 report, the arbitrator did not specifically discuss this misconduct in the opinion. However, the arbitrator rejected the allegation that Ms. Montgomery engaged in misconduct by failing to enter information into FACTS and there is substantial evidence to support this determination. Although Ms. Montgomery stated that she did not know why she did not enter any narratives into FACTS regarding the November 1, 2017 report, she also stated that there have been occasions when she has entered information into FACTS and the information disappears because of a FACTS crash. She further testified that the only explanation she could think of for the missing narrative is that a FACTS shutdown occurred and the notes disappeared. As previously mentioned, a CYFD data evaluation unit manager testified that FACTS crashes regularly.

**{38}**     Based on the foregoing, we conclude that there is substantial evidence to support a finding that Ms. Montgomery did not commit any misconduct based on a failure to document information into FACTS. *See Medina v. Found. Rsrv. Ins. Co.*, 1997-NMSC-027, ¶ 12, 123 N.M. 380, 940 P.2d 1175 ("Substantial evidence is that evidence which is relevant and which a reasonable mind could accept as adequate to support a conclusion."). To the extent that the district court found otherwise, it erred.

## C.     Other Asserted Grounds for Reversal

**{39}**     CYFD also asserts that the arbitrator "made numerous other noteworthy errors that were in addition to the arbitrator's specific failures" regarding the misconduct determinations. It brought these additional errors to the district court's attention—the district court concluded that four additional errors involving the arbitrator's misstatement of pertinent facts in the record contributed "to the conclusion that the [arbitrator's] decision is arbitrary and capricious because they suggest the decision may rest in part on a misapprehension of the facts and evidence presented at the hearings." We need not further address these additional errors, because our review of the record supports the arbitrator's final determinations.

## CONCLUSION

**{40}**     For the foregoing reasons, we reverse the district court.

**{41}** IT IS SO ORDERED.

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**SHAMMARA H. HENDERSON, Judge**